**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued: January 22, 2015    Decided: September 16, 2015)

Docket No. 14-2677-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ANDREW ORLANDER, individually and on
behalf of all others similarly situated,

*Plaintiff-Appellant*,

v.

STAPLES, INC.,

*Defendant-Appellee*.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before:    LEVAL, POOLER, *Circuit Judges*, MURTHA,[2] *District Judge*.

Plaintiff Andrew Orlander appeals from the judgment of the United States District Court for the Southern District of New York granting Defendant Staples, Inc.'s Rule 12(b)(6) motion to dismiss claims for breach of contract and violations of New York General Business Law ("N.Y. GBL") Sections 349 and 350, which prohibit deception of consumers and false advertising. Plaintiff purchased both a computer and a two-year Protection Plan from Defendant and brought suit after he was denied the Protection Plan services for which he allegedly paid. The district court ruled that the Protection Plan unambiguously excluded all but one of the services Plaintiff sought, that to the extent that Defendant breached, the breach was immaterial, and that Plaintiff failed to

---

[1] The Clerk of the Court is directed to amend the caption as above.

[2] The Honorable J. Garvan Murtha, United States District Court for the District of Vermont, sitting by designation.

14-2677-cv
Orlander v. Staples, Inc.

adequately allege damages. The district court also ruled that Plaintiff failed to allege an actual injury under N.Y. GBL Sections 349 and 350.

The Court of Appeals concludes that Plaintiff has adequately alleged a materially misleading practice and an injury under N.Y. GBL Sections 349 and 350. With respect to the breach of contract claim, the Court concludes that the Protection Plan's terms are ambiguous as a matter of law, that the materiality of Defendant's breach is not a basis on which to dismiss Plaintiff's contract claim, and that Plaintiff has adequately alleged damages in the amount of his restitution interest. Accordingly, the judgment is VACATED and REMANDED with instructions to the district court to deny Defendant's motion to dismiss and to grant Plaintiff leave to amend his complaint with respect to any further damages he suffered from Defendant's alleged breach of contract.

> Megan A. Farmer, Gardy & Notis, LLP, New York, New York, *for Plaintiff-Appellant*.
>
> Barry M. Kazan, Thompson Hine LLP, New York, New York, *for Defendant-Appellee*.

Leval, *Circuit Judge*:

Plaintiff Andrew Orlander, a resident and citizen of New York State, appeals from the district court's dismissal, under Fed. R. Civ. P 12(b)(6) for failure to state a claim, of his claims for breach of contract and for violations of New York General Business Law ("N.Y. GBL") Sections 349 and 350, which prohibit deception of consumers and false advertising. Defendant Staples, Inc. is a Delaware corporation that advertises, distributes, markets, and sells its Computer and Monitor Protection Plans to consumers throughout New York State.[3] Plaintiff purchased both a computer and a two-year, $99.99 "Carry-in" Protection Plan from Staples, and brought suit, individually and

---

[3] These facts are drawn from Plaintiff's complaint, and we assume their accuracy for the purpose of reviewing a dismissal under Fed. R. Civ. P. 12(b)(6). *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).

on behalf of all others similarly situated, after Staples denied Plaintiff the services for which he allegedly paid.

Plaintiff argues that the district court erred in finding the language of the Protection Plan Brochure ("the Contract") to be unambiguous; in requiring Plaintiff to show a "material" breach of that contract; and in finding that the Plaintiff suffered no damages. Plaintiff also argues that the district court erred in finding that Plaintiff failed to plead an actual injury under N.Y. GBL Sections 349 and 350. Staples responds that the contract terms were unambiguous, that Plaintiff failed to allege a breach of the unambiguous contract, and that Plaintiff failed to show damages from the alleged breach. Defendant also argues that Plaintiff failed sufficiently to allege either a materially misleading practice or an actual injury under N.Y. GBL Sections 349 and 350.

We conclude that Plaintiff has adequately alleged both a materially misleading practice and an actual injury under N.Y. GBL Sections 349 and 350. We also conclude, with respect to the breach of contract claim, that the district court erred in finding the Contract to be unambiguous, in requiring Plaintiff to allege a "material" breach, and in finding that Plaintiff had failed to adequately allege damages. Construing the contract's ambiguities in Plaintiff's favor, he has alleged Staples's failure to perform in the first year of the contract and damages in the amount of his restitution interest. Should Plaintiff seek damages beyond his restitution interest, he should amend his complaint as authorized by this opinion. Accordingly, we vacate the judgment and remand with instructions to the district court to deny Staples's motion to dismiss and to allow Plaintiff to amend his complaint with respect to contract damages.

**BACKGROUND**

On March 3, 2012, Plaintiff purchased a Hewlett Packard computer at a Staples store, and also purchased Staples's two-year "Carry-in" Protection Plan for $99.99. He was given a Protection Plan Brochure ("the Contract"), as well as verbal assurances from a Staples sales representative that "[t]he manufacturer's warranty [would] not be sufficient to address issues that arise with the computer," that "pursuant to the manufacturer's plan, Plaintiff [would] be required to package his computer and ship it back to the manufacturer," and that, in contrast, the Staples Protection Plan would "provide complete coverage so that Plaintiff would never need to contact the manufacturer for repairs or replacement." A 13-14.

The second page of the Contract listed prices for both "3 Year" and "2 Year" Carry-in Protection Plans on desktop computers. A 32. Prices were pegged to the purchase price of the computer to be protected. Plaintiff paid $509.99 for his computer and $99.99 for a "2YR" protection plan. A 32-33.

The second page of the Contract promised purchasers of Protection Plans, "[Y]ou can count on," *inter alia*, "24/7 technical support and customer service," "100% parts and labor coverage," and "[o]ne-time replacement or cash settlement if equipment cannot be repaired*." A 32. This latter "replacement" provision alone was starred ("*"). The single star referred to a paragraph in small type on the back page of the Contract, which reads in pertinent part: "Some restrictions apply. For complete details, including Obligor Information, see Terms and Conditions. The plan term is inclusive of manufacturer's warranty and store return policy and does not replace the manufacturer's warranty." A 31. The second page of the Contract also promised purchasers of

Carry-in Protection Plans, "We will refer you to the nearest authorized repair center for service." A 32.

On November 21, 2012, after several months of use, Plaintiff brought the computer back to Staples, reporting internet-connectivity issues, and sought an exchange. A Staples employee told Plaintiff to contact Hewlett Packard directly and explained that "there was *no* coverage from the Protection Plan until the manufacturer's warranty expired." A 13 (emphasis added). Plaintiff did not attempt to contact Hewlett Packard directly, but instead inquired further with Staples about the underlying "Terms and Conditions" of the Protection Plan he had purchased, which are mentioned exclusively (but are not set forth) in the small-print, starred paragraph on the back of the Contract. Plaintiff was ultimately unable to procure these Terms and Conditions.

On January 4, 2013, however, Plaintiff did receive a letter from a Staples Sales Manager stating:

> Staples Protection Plans does not cover the first year, Staples Protection Plans covers the 2nd year when the warranty expires from the manufacturer, In Andrew Orlander [sic] case HP should cover the repair on the HP Desktop, Staples will pick up the second year on his replacement plan.

A 14.

On January 31, 2013, Plaintiff brought this putative class action for breach of contract, violations of N.Y. GBL Sections 349 and 350, breach of express and implied warranties, and unjust enrichment. Staples filed a motion to dismiss pursuant to both Rules 12(b)(3) (improper venue) and 12(b)(6) (failure to state a claim). On June 30, 2013, after briefing and a hearing on the motion, the district court issued a memorandum and order granting the motion to dismiss for failure to state a claim. *Orlander v. Staples, Inc.*, No. 13 Civ. 703 NRB, 2014 WL 2933152

5

(S.D.N.Y. June 30, 2014). The district court rejected the venue argument because the binding arbitration clause on which the motion was grounded was contained only in the Terms and Conditions of the Purchase Plan, which the Plaintiff allegedly never received, and which the district court accordingly did not consider part of the Contract. *Orlander*, 2014 WL 2933152, at *2-4. Plaintiff now appeals from the dismissal of his breach-of-contract and N.Y. GBL Sections 349 and 350 claims.

## DISCUSSION[4]

## I. Breach of Contract Claim

To state a claim for breach of contract under New York law, "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). It is undisputed that prongs (i) and (ii) have been met. The content of the Contract at issue is set forth in the Protection Plan Brochure which Plaintiff received from Staples when he purchased a $99.99 two-year "Carry-in" Protection Plan.[5] The district court found the Contract

---

[4] The district court had diversity jurisdiction pursuant to 28 U.S.C. §1332. Plaintiff filed a timely Notice of Appeal on July 29, 2014. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. §1291. A district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is reviewed *de novo*, *Mayor & City Council of Balt., Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013), accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *Litwin*, 634 F.3d at 715.

[5] *See Orlander*, 2014 WL 2933152, at *5 ("Because we assume, as we must at this stage, that the Terms and Conditions of the Protection Plan were not disclosed or made available to [plaintiff] before, during or after [the] time of purchase, we limit our analysis of the contract to the brochure.

unambiguous in denying to Plaintiff any and all services from Staples that were also covered by the manufacturer's warranty. Plaintiff challenges the district court's finding of no ambiguity, as well as its assessment of the failure to perform and damages prongs of Plaintiff's contract claim.

### A. *Ambiguity of the Contract*

"Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990); *see also JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009). A contract term is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (internal quotation marks omitted). Furthermore, the ambiguity analysis should be constrained by normal rules of contract interpretation: "words and phrases . . . should be given their plain meaning" and a "contract should be construed so as to give full meaning and effect to all of its provisions." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003). "[I]f a contract is ambiguous as applied to [the facts that furnish the basis of the suit], a court has insufficient data to dismiss a complaint for failure to state a claim." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004).

---

. . . [V]iewing the brochure as the contract, we begin our analysis by determining whether Staples failed to perform the services it promised." (internal citations omitted)).

The salient aspects of the instant Contract are the second page of the Protection Plan Brochure and a paragraph printed in small type on the back page of the Brochure, to which one of the second-page provisions refers. The second page reads in relevant part:

> **Coverage you can count on.**
>
> **Here's what's included:**
>
> • 24/7 technical support and customer service
> • 100% parts and labor coverage
> • Coverage against normal mechanical or electrical failures as a result of normal wear and tear
> • One-time replacement or cash settlement if equipment cannot be repaired*
> • Power surge coverage of up to $1,000 over the life of the Plan
> • Transferable coverage
>
> **Types of servies** [sic]**:**
> • Carry-in: We will refer you to the nearest authorized repair center for service.
> • Express shipping: We will provide prepaid shipping to and from our repair facility.
> • On-site: We will do our best to repair your product at your home or workplace. If needed, we will pay for shipping to a designated service provider.

A 32.

The "*" symbol affixed to the fourth bullet point above refers to a paragraph at the bottom of the back page of the Brochure which reads:

> * Some restrictions apply. For complete details, including Obligor information, see Terms and Conditions. The plan term is inclusive of manufacturer's warranty and store return policy and does not replace the manufacturer's warranty. Plan does not cover cracked or broken screens and any failures due to accidental damage. Not responsible for lost data. Replacement product can be a new, rebuilt or refurbished one of similar features and functionality. Replacement or cash settlement fulfills the contract in its entirety, except on flat screen monitors.

A 31.[6]

The district court relied on the provision that "[t]he plan term is inclusive of manufacturer's warranty . . . and does not replace the manufacturer's warranty" in finding that the Contract unambiguously provided that the Staples Protection Plan did not entitle Plaintiff to any services during the one year that the manufacturer's warranty is in existence. The district court explained:

> Although the language at issue here ["plan term is inclusive of manufacturer's warranty . . . and does not replace the manufacturer's warranty"] could certainly be clearer . . . we nevertheless conclude that it *unambiguously* communicates that during the life of the manufacturer's warranty, *anything* covered by that warranty is the responsibility of the manufacturer.

*Orlander*, 2014 WL 2933152, at *6 (emphasis added).

We find the Contract ambiguous in several respects relevant to Plaintiff's claim. First, the starred, small-print paragraph of restrictions, which refers to the manufacturer's warranty, facially applies to only *one* provision in the list of "what's included" in the Protection Plan. "One-time replacement or cash settlement if equipment cannot be repaired*" (A 32) is the only provision in the list of services provided by the Plan that is apparently affected by the "restrictions" in the

---

[6] For the purposes of the motion to dismiss, the district court properly concluded that the "Terms and Conditions" referenced in this paragraph were not incorporated into the Contract, as Plaintiff alleged that these Terms and Conditions were not disclosed or made available to him. *Orlander*, 2014 WL 2933152 at *5. *See Faulkner v. Beer*, 463 F.3d 130, 135 (2d Cir. 2006) (holding that "if a plaintiff had not received a copy of [documents referenced in the contract], then that plaintiff's claims could not be dismissed based on warnings of risk in those documents"); *Chiacchia v. Nat'l Westminster Bank*, 507 N.Y.S.2d 888, 888 (2d Dep't 1986) (holding that the doctrine of incorporation by reference "is grounded on the premise that the material to be incorporated is so well known to the contracting parties that a mere reference to it is sufficient").

starred paragraph of small print. No such star is affixed to other provisions such as "24/7 technical support and customer service," "100% parts and labor coverage," "Coverage against normal mechanical or electrical failures as a result of normal wear and tear," or "Power surge coverage of up to $1,000 over the life of the Plan." Thus, the Plan can be reasonably read to provide these latter aspects of protection independent of what is said in the small-print paragraph about the manufacturer's warranty.

Furthermore, the district court's interpretation of the small-print paragraph on the back page as meaning that "anything" covered by the manufacturer's warranty is not covered by the Staples Plan is far from the only reasonable interpretation. As for the clause that reads "The plan term is inclusive of manufacturer's warranty and store return policy," it could mean several things. (Among its ambiguities is whether the term, "term," was intended to refer to "duration" of plan protection or – as the district court appears to have interpreted it – to a provision of the Plain's coverage, such as the starred "term" on the second page of the Brochure.) And as for the clause that reads, "The plan term . . . does not replace the manufacturer's warranty," we have no idea what it meant. One permissible interpretation might be that the manufacturer's warranty offers dual, alternative coverage, alongside the protections offered by Staples. It certainly does not unambiguously communicate that Staples's plan gives no protection while the manufacturer's warranty is in effect, or even that, while the manufacturer's warranty is operative, the protection given by the Staples plan is limited to coverage not provided by the manufacturer's warranty.[7]

---

[7] Read in its entirety, the Protection Plan Brochure suggests that the draftsperson knew how to

14-2677-cv
Orlander v. Staples, Inc.

The district court was undoubtedly correct in observing that the language provided by Staples in defining the scope of its coverage "could certainly be clearer." *Orlander*, 2014 WL 2933152, at \*6. The ambiguities of the Staples Plan are numerous and complex. As there are a number of reasonable interpretations of the relevant Contract provisions, they are ambiguous as a matter of law. *See Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993) ("An ambiguous term is one about which reasonable minds could differ.").

*B. Defendant's Failure to Perform*

It is notable that, even on its interpretation of the Contract as "unambiguously communicat[ing] that during the life of the manufacturer's warranty, anything covered by that warranty is the responsibility of the manufacturer," *Orlander*, 2014 WL 2933152, at \*6, the district court concluded that Defendant *did* breach one of the Contract's provisions – the provision defining "Carry-in" service, according to which Staples promised, "We will refer you to the nearest authorized repair center for service." A 32. The court, however, dismissed this breach as immaterial and non-damaging. *Orlander*, 2014 WL 2933152, at \*6.

---

write a provision that unambiguously exempted Staples from liability for coverage to the extent and for the duration that the manufacturer's warranty provided such coverage. In a section on page three detailing a "Monitor Plan" that Plaintiff did not purchase, there is a restriction provision, marked with a triple star symbol ("\*\*\*"), that closely resembles the district court's *interpretation* of the restriction provision marked with a single star symbol ("\*"). The triple-starred provision reads: "Monitor plan includes screen replacement for manufacturer defect. . . . Plans begin after the shortest portion of the manufacturer's warranty ends (parts or labor)." A 32. This language communicates that Monitor Plans purchased from Staples will apply only after the shortest portion of the manufacturer's warranty ceases to apply. It is wholly different than the restriction that applies to the repair/replacement provision of Plaintiff's Contract, a restriction that reads "plan term is inclusive of manufacturer's warranty . . . and does not replace the manufacturer's warranty." A 31.

11

Neither the district court nor Defendant have contended that this provision was negated by the manufacturer's warranty restriction on the back page of the Contract. Yet when Plaintiff brought in his malfunctioning computer, Defendant did not refer him to the nearest authorized repair center for service. Instead, Defendant allegedly told Plaintiff: to contact his manufacturer directly; that "there was no coverage from the Protection Plan until the manufacturer's warranty expired"; and that "Staples Protection Plans does not cover the first year, Staples Protection Plans covers the 2nd year when the warranty expires from the manufacturer . . . [the manufacturer] should cover the repair on the [computer], Staples will pick up the second year on [Plaintiff's] replacement plan." A 13-14. Staples accordingly interpreted the Plan differently from the district court. While the district court read it as not providing coverage that is provided by the manufacturer's warranty, Staples read its Plan as providing no coverage whatsoever during the period when the manufacturer's warranty was in effect, regardless of whether the coverage ordinarily provided on the face of the Plan was also provided by the manufacturer. Under the district court's interpretation of the Contract, Staples failed to provide Plaintiff with the one service it owed him – referral to the nearest authorized repair center.

Because the Contract is ambiguous as a matter of law, its meaning – and thus the sufficiency of Staples's performance – may be clarified by extrinsic evidence. *See JA Apparel*, 568 F.3d at 397 ("[W]here the contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be considered."); *Consarc*, 996 F.2d at 573 ("Where reasonable minds could be said to differ because the language the parties used in their written contract is susceptible to more than one meaning – each as reasonable as the other – and where extrinsic evidence of the

12

parties' actual intent exists, it should be submitted to the trier of fact."). Plaintiff alleged extrinsic evidence to the effect that:

> When he purchased the computer and Protection Plan, Plaintiff was told by a Staples sales representative that the Protection Plan will provide complete coverage so that Plaintiff would never need to contact the manufacturer for repairs or replacement. Plaintiff was assured that if he was having problems with his computer, he would only need to bring the computer to his local Staples store to have the problems resolved.

A 13. The trier of fact should be permitted to consider such evidence in determining the meaning of the ambiguous provisions of the Plan and whether and to what extent Staples failed to perform the contractual obligations it undertook.

*C. Materiality*

The district court found Defendant's failure to provide the promised referral service immaterial, citing *VFS Financing, Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372 (S.D.N.Y. 2014). *Orlander*, 2014 WL 2933152, at *6. The issue in *Falcon Fifty*, however, was whether an injured party was *excused* from performing its side of a contract where the other party had breached. 17 F. Supp. 3d at 379 ("Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach."). It appears to have no bearing on this case. Plaintiff does not ask to be excused from performing his side of the contract, as he claims to have already performed in full. The only remedy he has is a suit for breach. *See Jim Beam Brands Co. v. Tequila Cuervo La Rojena S.A. De C.V.*, No. 600122/08, Slip Op. at 5-6 (N.Y. Sup. Ct., N.Y. County Jan. 27, 2011) ("The New York courts routinely allow a nonbreaching party to seek damages, not only

for a material breach, but also for a minor, or immaterial, breach as well. . . . The materiality or non-materiality of a breach of contract only goes to the question of the type of remedy that may be allowed, not to the issue of liability. In order to be entitled to *nonmonetary* relief for breach of a contract, the non-breaching party must demonstrate that the breach was material." (internal citations omitted)); *see also* 23 Williston on Contracts § 63:3 (4th ed. 2015) ("[T]he nonbreaching party is entitled to damages caused even by the immaterial breach, albeit that these may be nominal in amount. . . . [A] nonperforming party is liable for any breach of contract, but the other party is discharged from further performance, and is entitled to substantial damages only when there is a material breach.").

In any event, the question of the materiality of a breach "is usually a question of fact and should be decided as a matter of law only where the inferences are certain." *Falcon Fifty*, 17 F. Supp. 3d at 380. Here, the inferences were far from certain. The district court improperly decided them in the Defendant's favor, concluding that Defendant's failure to refer Plaintiff to the nearest authorized repair center was immaterial since "plaintiff could have contacted [the manufacturer directly] and obtained [the location of the nearest authorized repair center] – as well as the repairs he was entitled to." *Orlander*, 2014 WL 2933152, at *6.[8] The pleadings do not support such speculation.

---

[8] During a hearing on the motion to dismiss, the district court entered its own evidence into the record in support of the conclusion that Plaintiff suffered no material breach and no damages from Defendant's failure to refer: "So at some point or other, maybe last week, I did a Google search and there is an authorized repair center for HP in Rye. It was something like 3 miles [a]way, if I remember the number. I could be wrong. Maybe it's 5 miles. There was an option at least, you

14-2677-cv
Orlander v. Staples, Inc.

*D. Damages*

The foregoing discussion of materiality assumed that Plaintiff could show no breach other than failure to perform the "Carry-in" provision. The district court, however, erred in its belief that this was the extent of breach that Plaintiff could show. As explained below, Plaintiff might be able to show that Staples breached numerous provisions of the Plan, depending on how the ambiguous contract is interpreted. The district court found that "[i]n order to claim damages, plaintiff would have to allege that after he contacted Hewlett Packard, it failed to fix his computer, or failed to do so free of charge, and Staples then refused to either fix the computer itself or reimburse him." *Orlander*, 2014 WL 2933152, at *7. This finding is erroneous to the extent that it is based on the district court's interpretation of the Contract as "unambiguously communicat[ing] that during the life of the manufacturer's warranty, anything covered by that warranty is the responsibility of the manufacturer." *Id.* at *6. Among the various possible reasonable interpretations of these unclear provisions, the Contract could easily have meant that the purchaser could claim directly from Staples all the aspects of protection stated in the Plan regardless of whether the manufacturer's warranty was in effect and regardless of whether the manufacturer's warranty gave similar coverage. Accordingly, what damages Plaintiff suffered as the result of Staples taking the position that the Plan gave no protection whatsoever during the first year (of its two-year term) depends on

know, close to the place that he bought [the computer]." A 68. Such "evidence" is not in the pleadings, and only a series of unsupported inferences against the Plaintiff would lead to the conclusion that the HP repair center discussed is "the nearest authorized repair center" referenced in the Contract, or that the manufacturer's warranty would send Plaintiff there as opposed to having him ship the malfunctioning computer to a central facility.

15

what will be found to be the meaning of the Contract upon taking into consideration the extrinsic evidence. The Plaintiff's damages could include loss from Staples's failure to grant each of the services stated in the Contract.

In addition, Plaintiff has sufficiently alleged damages in the amount of his "restitution" interest. *See* A 27 (seeking, *inter alia*, "restitution . . . damages"). "It is well settled that if the plaintiff has made money payments to the defendant, and there is a failure of consideration whereby defendant materially breaches the contract, the plaintiff can maintain an action for restitution of the money so paid to the defendant." *Men's Sportswear, Inc. v. Sasson Jeans, Inc.* (*In re Men's Sportswear, Inc.*), 834 F.2d 1134, 1141 (2d Cir. 1987); *see also 360Networks Corp. v. Geltzer* (*In re Asia Glob. Crossing, Ltd.*), 404 B.R. 335, 341 (S.D.N.Y. 2009) ("'The general principle is that upon the defendant's substantial breach or repudiation of an enforceable contract, the plaintiff is entitled to recover restitution of any benefits he has conferred in performance of the contract, for example, any part of the price which he has prepaid, or the reasonable value of any services rendered as contract performance.'" (quoting 3 Dan B. Dobbs, *The Law of Remedies* § 12.7(1) (2d ed. 1993))).

Plaintiff has already performed his side of the Contract by paying $99.99 for a two-year "Carry-in" Protection Plan, and Defendant has allegedly repudiated all responsibility for services in the first year of the two-year Contract. *See* A 13-14 (alleging the Defendant's agents told Plaintiff that "there was no coverage from the Protection Plan until the manufacturer's warranty expired" and that "Staples Protection Plans does not cover the first year, Staples Protection Plans covers the 2nd year when the warranty expires from the manufacturer . . . ."). "[T]he plaintiff in a

16

breach-of-contract action may . . . elect to measure her damages by the value of the benefit the defendant has unjustly retained." *Asia Glob. Crossing*, 404 B.R. at 342.

Whether Defendant has in fact substantially breached the Contract and, assuming it has, the exact amount of Plaintiff's restitution interest in the breached portion of the Contract, are questions to be determined at a later stage of litigation.[9] Furthermore, should Plaintiff seek damages beyond his restitution interest, he would be wise to amend his complaint to include particularized allegations of the losses he suffered from Staples's refusal of services that it allegedly owed him. On remand, Plaintiff should be granted leave to so amend.

<u>II. Deceptive Practice and False Advertising Claims</u>

N.Y. GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GBL Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To successfully assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012) (internal quotation marks omitted).

---

9 *Compare In re Men's Sportswear*, 834 F.2d at 1140-1141 (reviewing calculation of restitution damages), *with Wiener v. Lazard Freres & Co.*, 672 N.Y.S.2d 8, 13 (1st Dep't 1998) (reversing the dismissal of a complaint seeking restitution where the lower court improperly made findings of fact that contravened plaintiffs' allegation "that a benefit ($300,000) was bestowed upon [Defendant], for which [Defendant] has not adequately compensated plaintiffs . . . in that it abandoned its efforts on plaintiffs' behalf").

It is undisputed that Plaintiff has met the first prong of his N.Y. GBL claims: "There is no question that the sale of Staples Protection Plans constituted 'consumer-oriented conduct.'" *Orlander*, 2014 WL 2933152, at *8. As for the "materially misleading" prong, "[t]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)). Despite its interpretation of the Contract as unambiguous, the district court allowed that "it is possible" that a reasonable consumer confronted with both the Contract and "contradictory statements by sales staff and a lack of access to the Terms and Conditions, would be confused." *Orlander*, 2014 WL 2933152, at *8. Accordingly, the district court focused on the injury prong, "assuming that plaintiff was reasonably misled into believing that Staples was responsible for services covered under the manufacturer's warranty." *Id.* at *9.

Before discussing the district court's ruling with respect to injury, however, it is appropriate to clarify the exact nature of the "materially misleading" practices alleged, as that necessarily influences the injury analysis. Furthermore, Defendant asks us to affirm the district court on the alternative ground that Plaintiff failed to sufficiently allege any materially misleading practice, let alone an injury. In "assuming" that Plaintiff "was reasonably misled into believing that Staples was responsible for services covered under the manufacturer's warranty," the district court neglected its own earlier contractual analysis and, in doing so, raised the bar higher than was necessary for Plaintiff to establish a "materially misleading" practice. There can be little doubt that

18

Plaintiff was "reasonably misled into believing that Staples was responsible" for referring Plaintiff to "the nearest authorized service center," notwithstanding the manufacturer's warranty: it is undisputed that the Contract promised this referral service and that Defendant's agents explicitly disclaimed responsibility for providing it. On this ground alone, Defendant's argument on appeal – that no materially misleading practice has been alleged – fails.[10]

More significantly, as discussed above, it is not the case that the Contract unambiguously states that any coverage provided by the manufacturer's warranty would not be provided by Defendant. Accordingly, representations of Defendant's agents to the effect that "the Protection Plan will provide complete coverage so that Plaintiff would never need to contact the manufacturer for repairs or replacement" and that Plaintiff "would only need to bring the computer to his local Staples store to have the problems resolved" do not necessarily "contradict[]" the Contract. Rather than merely "confus[ing]" the consumer, as the district court found, A 13; *Orlander*, 2014 WL 2933152, at *8, Defendant's representations would objectively incline a reasonable consumer to read the ambiguous Contract as offering more services than Defendant intended to provide. Given the ambiguous Contract and the oral assurances of Defendant's agent, a reasonable consumer might well believe, e.g., that in purchasing the "Carry-in" Protection Plan, she could expect Staples to refer her to "the nearest authorized services center" for free repair of her computer and

---

[10] Although such a referral might not be particularly *valuable*, the "materially misleading" inquiry goes to the extent to which the consumer was deceived rather than the consequences resulting from the deception. *See Oswego Laborers' Local*, 85 N.Y.2d at 26 (asking whether "the business alone possesses *material* information that is relevant to the consumer and fails to provide this information" (emphasis added)).

19

that, in the event of the need for a replacement, Staples would contact her manufacturer to secure it. Accordingly, Plaintiff has sufficiently alleged a "materially misleading" practice, one that could lead a reasonable consumer to expect *much* more service than Staples has provided.

Plaintiff has also sufficiently alleged an injury stemming from the misleading practice – payment for a two-year "Carry-in" Protection Plan which he would not have purchased had he known that Defendant intended to decline to provide him any services in the first year of the Contract. In finding that this allegation did not state an "actual" injury under N.Y. GBL Sections 349 and 350, the district court relied on a series of inapposite cases. *See Orlander*, 2014 WL 2933152, at *9 (citing New York and Second Circuit authorities).

In *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 30-31 (2000), the New York Court of Appeals rejected the plaintiff's claim not because the plaintiff failed to state an injury under N.Y. GBL Section 349, but because he failed to allege a deceptive practice. Indeed, the court explained that the allegation that a deceptive practice caused plaintiff to pay a $275 fee sufficiently pled an actual injury under Section 349. *See id.* In the other two cases on which the district court relied, our Court and the First Department declined to find Section 349 injuries where the plaintiffs alleged damages in the amount of the purchase price of their contracts, *but failed to allege* that defendants had denied them the services for which they contracted. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (finding no injury where plaintiff "does not claim that he did not receive adequate insurance coverage or that he did not contract for the coverage he received"); *Sokoloff v. Town Sports Int'l, Inc.*, 778 N.Y.S.2d 9, 9 (1st Dep't 2004) (finding payment of membership fee was not a cognizable § 349 injury where plaintiff "d[id] not claim that defendant failed to deliver the

services called for in the contract"). Here, to the contrary, Plaintiff has alleged both a monetary loss stemming from the deceptive practice and the Defendant's failure to deliver contracted-for services.

Defendant argues that New York courts have recognized the payment of a plaintiff's purchase price as a Section 349 injury only when the plaintiff paid a "price premium." But there is no such rigid "price premium" doctrine under New York law. Rather, the cases on which Defendant relies all involved the purchase of consumable goods. In these cases, the issue of "price premium" was relevant because it showed that plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers. *See Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (finding a sufficiently-pled § 349 injury where plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); *Lazaroff v. Paraco Gas Corp.*, 967 N.Y.S.2d 867 (N.Y. Sup. Ct. Kings Cty, Feb. 25, 2011) (finding a sufficiently-pled § 349 injury where plaintiff alleged that he would not have paid the price charged for a "20 pound" propane cylinder had he known it contained only 15 pounds of propane).

These consumable goods cases follow the same logic as the contract cases cited by the district court: in either situation, a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase. *Cf. Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (requiring a "connection between the misrepresentation and [some] harm from, or failure of, the product"). In the instant case, Plaintiff has alleged that he purchased a two-year "Carry-in" Protection Plan but did not receive the

services that Defendant misleadingly told Plaintiff he was purchasing. Accordingly, Plaintiff has stated a claim under N.Y. GBL Sections 349 and 350.

**CONCLUSION**

For the foregoing reasons, we vacate the judgment and remand to the district court with instructions to deny Defendant's motion to dismiss and to grant Plaintiff leave to amend his complaint in order to particularize the damages he suffered from the alleged breach of contract, should he wish to do so.