Hall, Circuit Judge:
*84 This is an appeal from a judgment entered on January 2, 2018, in the United States District Court for the District of Vermont (Sessions, J. ), granting a permanent injunction barring the Town of Shelburne, Vermont ("the Town") from enforcing against Vermont Railway, Inc. ("the Railway") the Town's "Ordinance Regulating the Storage, Handling and Distribution of Hazardous Substances" ("the Ordinance") and §§ 1950.1 and 1950.2(A) of the Performance Standards section of the Town's zoning bylaws. The litigation arises out of the Railway's development of property for use as a road salt transloading facility in the Town. When the Town enacted the Ordinance and then attempted to enforce it against the Railway, the Railway sought injunctive relief in the District Court. Determining that these regulations, as applied to the Railway, are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101 et seq ., the District Court granted a permanent injunction. This appeal followed.
The issue on appeal is whether the Ordinance falls within an exception to ICCTA preemption that allows the continued application of state and local regulations affecting rail transportation if the regulations constitute a valid exercise of the local body's police powers. The District Court ruled that the Ordinance is not a valid exercise of the Town's police powers because it discriminates against the Railway and unreasonably burdens rail transportation by placing significant restrictions on the movement of rail cars and rail commodities, which restrictions do not meaningfully protect public health and safety. We identify no error in either the District Court's legal analysis of the Town's police powers or its factual findings underlying that analysis, and we thus affirm the judgment of the District Court.
I.
In late 2015, the Railway purchased a parcel of land along its main line in the Town. The Railway intended "to develop a state-of-the-art, rail-to-truck transloading facility ... intended for the handling of bulk commodities, primarily road salt, shipped to Vermont by rail and used for deicing winter roads" ("Facility"). Appellee Br. 1-2. The Railway intended to stockpile sodium chloride (road salt) at the Facility over the summer months for distribution as needed during the winter.
When the Town attempted to enforce a pre-construction permit requirement against the Railway, the Railway sought declaratory and injunctive relief in the District Court, arguing that the ICCTA preempts the Town's local zoning regulations as applied to the Railway. Following a six-day evidentiary hearing, on June 29, 2016, the District Court entered a declaratory order that the ICCTA preempts the Town's pre-construction permit requirement, and enjoined the Town from "enforcing any regulation that prevents the Railway from constructing its proposed facility." J. App. 316. That June 2016 declaratory order determined, as part of the District Court's preemption ruling, that the construction and operations of the Railway's planned salt transloading facility constitute "transportation by rail carrier" as that term is used in the ICCTA. J. App. 332-34. The District Court "reserve[d] judgment on the question of whether the ICCTA preempts other zoning regulations derived from the Town's police powers that relate to the operation of the Railway's proposed facility" and directed the Town to "indicate[ ] precisely which zoning *85 regulations it intends to enforce." J. App. 317. The District Court explained that its future consideration of identified regulations would not require it to revisit the "transportation by rail carrier" ruling; rather, the court would merely evaluate whether each such regulation met the police powers exception to ICCTA preemption. J. App. 317, 343-44. The Town moved for reconsideration of the June 2016 order, and the District Court denied that motion in June 2017.
On August 21, 2017, having received input from both parties, the court entered partial final judgment on its June 2016 ruling that the Railway's activities constitute transportation by rail carrier and the ICCTA "preempts the Town['s] ... pre-construction permit requirement and related zoning regulations as to the [Facility]." Sp. App. 7-8. The Town did not appeal from that partial final judgment. Indeed, the Town had specifically indicated it did "not oppose the entry" of partial final judgment, while offering suggested language that modified the Railway's proposed partial final judgment order by more closely mirroring the District Court's June 29 declaratory order. Dkt. No. 193, 2:16-cv-16.
A few weeks earlier, on August 8, 2017, the Town had enacted the Ordinance at issue in this appeal, which the Town identified "as falling under the post-construction police powers it intend[ed] to enforce against the Railway, as requested by the Court's June 29, 2016 Order."[1] Sp. App. 7. At that time, the Facility "had been constructed and was fully operational." Appellee Br. 3; accord Sp. App. 6.[2]
About three weeks later, on September 1, 2017, the Railway moved for a preliminary injunction seeking to restrain enforcement of the Ordinance, following which the District Court held yet another evidentiary hearing. In an Opinion and Order issued on December 7, 2017, the District Court ruled that the Ordinance was also preempted by the ICCTA, and permanently enjoined the Town from enforcing it against the Railway.[3] The District *86 Court reasoned that the Ordinance did not meet the police powers exception to preemption because (1) "the timing of its enactment, the focus and thresholds included in it, and the severe penalties permitted by it all point toward discrimination against the Railway" and (2) "the Ordinance would place significant restrictions on when and where rail cars move and when and where rail commodities are shipped and stored," which restrictions "unreasonably burden rail transportation and do not meaningfully protect public health and safety." Sp. App. 16-17. The District Court entered final judgment on that order on January 2, 2018.
II.
As a preliminary matter, we do not have jurisdiction to revisit the District Court's earlier ruling that the Railway's activities in the Town constitute "transportation by rail carrier" under the ICCTA. That is because no appeal was taken from the August 21, 2017 final judgment reflecting that ruling. The Town appealed solely from the District Court's December 7, 2017 order and the January 2, 2018 final judgment on that order. The Town's Notice of Appeal does not identify or reference any other decision or order of the District Court. See Fed. R. App. P. 3(c)(1)(B) (requiring Notice of Appeal to "designate the judgment, order, or part thereof being appealed"); see also New Phone Co. v. City of New York , 498 F.3d 127, 131 (2d Cir. 2007) (our appellate jurisdiction "depends on whether the intent to appeal from [a] decision is clear on the face of, or can be inferred from, the notice[ ] of appeal").
The December 7, 2017 order does not revisit the transportation by rail carrier holdings from June 29, 2016 and June 28, 2017, discussing those rulings only to provide the procedural background of the case and explain that they were now law of the case and no longer at issue: "Because the Court has already determined that the activities conducted at the facility constitute transportation by a rail carrier and are thus subject to the ICCTA's preemption clause, the Court now needs only to determine whether the [ ] Ordinance falls with the scope of ICCTA preemption." Sp. App. 15; see Musacchio v. United States , --- U.S. ----, 136 S.Ct. 709, 716, 193 L.Ed.2d 639 (2016) (holding that, although law-of-the-case doctrine does not bind an appellate court, prior rulings by a district court are presumed to govern later district court proceedings in same case). Accordingly, we cannot infer from a Notice of Appeal that makes no mention of the District Court's June 29, 2016 or June 28, 2017 orders, much less its August 21, 2017 partial final judgment, that the Town intended to appeal from the District Court's transportation-by-rail-carrier ruling made therein. See Shrader v. CSX Transp., Inc ., 70 F.3d 255, 256 (2d Cir. 1995) (holding that we did not have jurisdiction to consider an order not mentioned in the notice of appeal). We lack "authority to waive the jurisdictional requirements of Rule 3(c)(1)(B), and our jurisdiction is limited by the wording of the notice." Kovaco v. Rockbestos-Surprenant Cable Corp ., 834 F.3d 128, 135 (2d Cir. 2016) (internal quotation marks and alterations omitted).
Even if we were to assume that the earlier orders were somehow incorporated in the Town's Notice of Appeal of both the December 7, 2017 order and January 2, 2018 judgment, the Town would be barred from attempting to relitigate a question that was already definitively determined through the entry of the August 21, 2017 partial final judgment that it failed timely *87 to appeal. See Bowles v. Russell , 551 U.S. 205, 210, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (holding that failure to timely appeal deprives an appellate court of jurisdiction); Cuoco v. Moritsugu , 222 F.3d 99, 110 (2d Cir. 2000) (noting that a district court's entry of partial final judgment is immediately appealable); Fed. R. App. P. 4 ("the notice of appeal ... must be filed with the district clerk within 30 days after entry of the judgment or order appealed from."); Andrew S. Pollis, Civil Rule 54(b): Seventy-Five and Ready for Retirement , 65 FLA. L. REV. 711, 722-23 (2013) (noting the "severe" consequence of failing timely to appeal a Rule 54(b) judgment: "given the time limit for appealing," a litigant who "wait[s] until the entire litigation end[s] to challenge the order [finds that he] forfeited his right to review"); cf. Window World of Chicagoland, LLC v. Window World, Inc ., 811 F.3d 900, 903 (7th Cir. 2016) (confronting similar issue and holding that, under both collateral estoppel and law of the case, ruling that "is immediately appealable" is barred from later appeal when litigant "gave up his chance to have the judgment in [opponent's] favor set aside" at first opportunity). That the Town specifically indicated it did not oppose entry of a partial final judgment indicates at the very least the Town was aware an appealable judgment was being entered. When it did not timely appeal the partial final judgment of August 21, 2017, the Town forfeited its right to appeal the transportation-by-rail-carrier ruling here.[4]
The sole question before this Court on appeal, therefore, is whether the Ordinance meets the police powers exception to preemption by the ICCTA. We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's order and final judgment on this issue.
III.
We review the application of preemption principles de novo . Marentette v. Abbott Laboratories, Inc. , 886 F.3d 112, 116 (2d Cir. 2018). We review factual findings for clear error. Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH , 843 F.3d 48, 62 (2d Cir. 2016).
IV.
The only argument advanced by the Town is that "the Ordinance constitutes a valid exercise of the Town's traditional municipal police powers and, therefore, is not preempted by the ICCTA." Appellant Br. 13. The District Court correctly determined the Ordinance is not a valid exercise of the Town's police powers, and we therefore affirm the District Court's grant of a permanent injunction barring the Town from enforcing the Ordinance against the Railway.
The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land[,] ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Federal preemption may "occur where compliance with both federal and state regulations is a physical impossibility, or where state law impedes the execution of the full purposes and objectives of Congress." Entergy Nuclear Vt. Yankee, LLC v. Shumlin , 733 F.3d 393, 409 (2d Cir. 2013) (internal citations omitted); see also Greater N.Y. Metro. Food Council, Inc. v. Giuliani , 195 F.3d 100, 104-05 (2d Cir. 1999) ("Under the doctrine of preemption, *88 ... any state or municipal law that is inconsistent with federal law is without effect.") (abrogated on other grounds). The "most obvious" form of preemption, however, occurs "where Congress expressly states that it is preempting state authority." County of Suffolk v. Long Island Lighting Co ., 728 F.2d 52, 57 (2d Cir. 1984).
The ICCTA contains such an express preemption clause. It vests the Surface Transportation Board with exclusive jurisdiction over "(1) transportation by rail carriers," and "(2) the construction, acquisition, operation, abandonment, or discontinuance of ... tracks, or facilities," and states that "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b).
We have recognized, however, that:
not all state and local regulations are preempted by the [ICCTA]; local bodies retain certain police powers which protect public health and safety. ... [S]tates and towns may exercise traditional police powers over the development of railroad property, at least to the extent that the regulations protect public health and safety, are settled and defined, can be obeyed with reasonable certainty, entail no extended or open-ended delays, and can be approved (or rejected) without the exercise of discretion on subjective questions.
Green Mountain R.R. Corp. v. Vermont , 404 F.3d 638, 643 (2d Cir. 2005) (internal quotation marks omitted). In Green Mountain , we held that "generally applicable, non-discriminatory regulations and permit requirements," such as "[e]lectrical, plumbing and fire codes, [and] direct environmental regulations enacted for the protection of the public health and safety," were the kind of regulation that could withstand ICCTA preemption. Id .
Under Green Mountain , the threshold question in our inquiry into whether a given local regulation is a permissible exercise of the governing body's police power, such that it is not subject to preemption under the ICCTA, is whether that regulation "protect[s] public health and safety." Id . The District Court's finding that the Ordinance does not "achieve[ ] any meaningful health or safety goals" is amply supported by the record. Sp. App. 25; see Sp. App. 22-24. That is, the Town's experts knew of no other legislation that classified road salt as a hazardous material; the Town's own salt storage shed did not have the environmental monitoring mechanisms that were in place at the Facility; the Ordinance outlaws spillage of road salt as may happen at the Facility, but permits the spreading of road salt for the purpose of de-icing motorways, driveways, and sidewalks; and the Town itself spreads road salt throughout the winter months. Indeed, the Town's own expert admitted that the mere storage of road salt causes no environmental impact. Given this evidence, we conclude that the District Court was not clearly erroneous in finding that the Ordinance failed to promote public health and safety. Applying this factual finding in our own de novo review, we conclude that the Town's assertion of a police powers exception to preemption fails as a matter of law.[5] See Green Mountain , 404 F.3d at 643.
V.
For the foregoing reasons, the judgment of the District Court is AFFIRMED.

The Ordinance prohibits the storage of substances above certain quantities within 250 meters of a school or waterway: 550 tons of sodium chloride, calcium chloride, magnesium chloride, or potassium chloride; 2,000 gallons on hydraulic oil, diesel fuel, unleaded fuel, heating oil, propane, motor oil, natural gas, or petroleum crude oil; and 34,500 gallons of ammonia, chlorine, or hydrogen fluoride. The Facility is within 250 meters of the LaPlatte River. The Facility holds 80,000 tons of road salt. The only other road salt storage in the Town is the Town's, which holds 550 tons.
Under the Ordinance, storage facilities may be inspected by designated Town officials, and "Health Orders" may be issued to require compliance. Sp. App. 10. A fine of $ 800 a day would be imposed for violations, and in the event an enforcement action were brought by the Town, the fines would go up to $ 10,000 a day. The violator could also be responsible for any costs incurred by the Town in monitoring the site.

The Railway was required to obtain state permits before beginning construction. Pursuant to the Multi-Sector General Permit ("MSGP"), the Railway prepared a Storm Water Pollution Prevention Plan ("SWPP") and applied to the Vermont Department of Environmental Conservation for an authorization to discharge, which was granted and from which the Town did not appeal. The Facility is subject to ongoing monitoring of discharge by the State. This involves upstream and downstream monitoring of the LaPlatte River. When an increase in sodium chloride was detected in the river, it was determined the increase was due to spillage during the transloading process and improvements were made to the Facility to prevent such spillage.

The District Court also held that §§ 1950.1 and 1950.2(A) of the Town's zoning bylaws were preempted because they were duplicative of the Ordinance. The Town does not address the District Court's ruling as to the zoning bylaws in its principal brief on appeal, and any challenge to that ruling is therefore waived.

Even if the Town could surmount this jurisdictional obstacle, however, we would reject any challenge to the ICCTA's application to the Railway's facility for the reasons ably stated by the District Court.

The Town does not argue that the District Court's permanent injunction analysis was erroneous, and, having determined that the District Court's preemption analysis is sound, we do not separately analyze the District Court's imposition of a permanent injunction.