23-710-cv
*Baines et al. v. Nature's Bounty (NY), Inc. et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand twenty-three.

PRESENT:
> **AMALYA L. KEARSE,**
> **GUIDO CALABRESI,**
> **ALISON J. NATHAN,**
> > *Circuit Judges.*

_____

Mashon Baines, on behalf of herself and all others similarly situated, Nancy Froning, on behalf of themselves and all others similarly situated,

> *Plaintiffs-Appellants,*                    **23-710-cv**

> **v.**

**Nature's Bounty (NY), Inc., The Bountiful Company (NY),**

        *Defendants-Appellees.*
_____

FOR PLAINTIFFS-APPELLANTS:        MICHAEL D. BRAUN, Kuzyk Law, LLP, Los Angeles, CA.

FOR DEFENDANTS-APPELLEES:        WILLIAM A. DELGADO (Megan O'Neill, Erik P. Mortensen, on the briefs), DTO Law, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Seybert, *J*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs, representing proposed classes of consumers, claim that Defendants misleadingly label their dietary supplement as "fish oil." While the product indisputably derives from fish oil, Plaintiffs allege that a particular processing step transforms it from fish oil into a distinct substance. Based on this theory, they bring claims under New York General Business Law §§ 349 and

2

350; claims under California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act; and claims for common law breach of express warranty and unjust enrichment under California and New York law. The district court granted Defendants' motion to dismiss all claims and denied leave to amend, holding that Plaintiffs' claims were preempted and, in any case, implausible. We assume the parties' familiarity with the remaining underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

We review both the application of preemption principles and the district court's decision to dismiss for failure to state a claim *de novo*. *See Vermont Railway, Inc. v. Town of Shelburne*, 918 F.3d 82, 87 (2d Cir. 2019); *Fink v. Time Warner Cable*, 714 F.3d 739, 740 (2d Cir. 2013). On a motion to dismiss, we accept Plaintiffs' factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *Fink*, 714 F.3d at 740-41. In order to withstand a motion to dismiss, Plaintiffs' complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

3

The district court determined that Plaintiffs' claims were preempted because federal law requires Defendants' product to bear the name "fish oil." As relevant here, the Food, Drug, and Cosmetic Act (FDCA) and its implementing regulations require the product to bear its "common or usual name . . . or, in the absence thereof, [a]n appropriately descriptive term." 21 C.F.R. § 101.3(b)-(c); *see also* 21 U.S.C. §§ 341, 343(i)(1). And the FDCA specifically prevents states from establishing any labeling requirements "not identical" to its own. 21 U.S.C. § 343-1(a)(3). Thus, if—as the district court concluded—the common or usual name of Defendants' product is fish oil, then Plaintiffs' state-law claims that the product must bear a different name are preempted by federal law.

A product's common or usual name must "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients," and "may be established by common usage." 21 C.F.R. § 102.5(a), (d). Although it is conceivable that a complaint and its attached materials could establish the common or usual name of a product with sufficient clarity to establish preemption at the pleading stage, that

4

is not the case here.

To determine the common name of the substance at issue here, the district court relied on various academic articles and other sources referenced in Plaintiffs' complaint, and it concluded that these sources uniformly referred to supplements like that of Defendants as "fish oil." To be sure, some of the sources do refer to esterified supplements derived from fish oil as a type of fish oil, such as a set of food standards that includes ethyl-ester concentrates under the general heading "Standard for Fish Oils." Supp. App'x 65-66. Others, however, are less clear, including an excerpt from an academic book that appears to distinguish between "concentrates of omega-3 fatty acids" and "the starting fish oils" from which they derive. App'x 244. And, importantly, the sources the district court relied on are largely technical and scientific articles whose probative value as to common usage by the general public is limited. These sources may be evidence relevant to determining the common name of the product, if it has one, but standing alone they are not enough to establish the common name definitively. Ultimately, they do not provide a sufficient basis to conclude Plaintiffs' claims are preempted at this early stage in the litigation.

We thus reach the merits of Plaintiffs' claims, which the district court also reached in the alternative. Here we agree with the district court that the claims, as alleged in this complaint, are not plausible. Plaintiffs' statutory claims under New York and California law are governed by substantially the same reasonable consumer test. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). And the parties do not contest that Plaintiffs' remaining claims rise and fall with that same reasonable consumer test since they rely on the claim that Defendants' labeling is misleading.

Under that test, Plaintiffs' obligation at the pleadings stage was to plausibly allege that Defendants' labeling was materially misleading, *i.e.*, "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 171 N.E.3d 1192, 1198 (N.Y. 2021) (quotation marks omitted). In evaluating Defendants' labeling from the standpoint of a reasonable consumer, we consider the entire label, bearing in mind that "context is crucial," and that "under certain circumstances, the presence of a disclaimer or similar clarifying language may

6

defeat a claim of deception." *Fink*, 714 F.3d at 742. However, because a reasonable consumer should not be expected to "look beyond misleading representations on the front of [a product] to discover the truth from the ingredient list in small print," additional back-label information that "contradict[s], rather than confirm[s]" front-label representations cannot defeat a deceptive labeling claim at the pleading stage. *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (quotation marks omitted).

In this case, it is not plausible that the challenged labeling would materially mislead reasonable consumers. Plaintiffs allege that Defendants' product is no longer fish oil because it has undergone a transformation at a molecular level: Although derived from natural fish oil, the supplement has been esterified, meaning that the omega-3s in the fish oil have been changed from their naturally occurring triglyceride form to ethyl-ester form. This molecular difference, Plaintiffs allege, means that the product is fundamentally a new and distinct substance. Fish oil that has undergone esterification is, according to Plaintiffs, no longer fish oil at all.

We need not settle the ontological status of Defendants' dietary

7

supplement, nor decide whether the distinction Plaintiffs emphasize could ever support a viable claim, in order to conclude that the complaint in this case fails to plausibly allege materially misleading labeling. The complaint delves into the molecular differences between omega-3s in triglyceride and in ethyl-ester form, drawing from scientific and technical articles on the production and processing of fish oil supplements, and cites comparative mass spectra findings that confirm the molecular make-up of Defendants' product. But it does not contain factual allegations that make it plausible that a reasonable consumer reading "fish oil" on the front label of Defendants' product would be misled into thinking the supplement only contains omega-3s in triglyceride form. The complaint alleges in a conclusory fashion that consumers care about the distinction between triglyceride and ethyl-ester omega-3s, but it does not provide any supporting allegations that make it plausible that consumers who purchase Defendants' product are actually thinking about the molecular form of their fish-oil-derived omega-3s at all.

Moreover, to the extent that this molecular distinction *does* matter to any consumer, that consumer can look to the back label and read that the product's

8

omega-3s are present "As Ethyl Esters." App'x 65. This additional information cures any potential ambiguity from the front label as to the form of the omega-3s in the supplement. Plaintiffs argue that this back-label statement cannot defeat their claim because it contradicts the representation on the front label that the product is "fish oil." *See Mantikas*, 910 F.3d at 637. But because Plaintiffs failed to plausibly allege that consumers understand the designation "fish oil" to communicate that the product necessarily contains fish-oil-derived omega-3s in triglyceride form, they have also failed to allege that the clarifying information on the back label contradicts the representations on the front label. To the extent the front label leaves any ambiguity about the contents of Defendants' product, the back label provides sufficient clarification. *Cf. Mantikas*, 910 F.3d at 637; *see Fink*, 714 F.3d at 742. Taking into account the entirety of Defendants' labeling, then, we agree with the district court's alternative conclusion that Plaintiffs have not pled plausible claims.

Nor did the district court err in denying leave to amend, a decision we generally review for abuse of discretion. *See, e.g.*, *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023). Plaintiffs already amended

9

their complaint once in the face of a pre-motion letter from Defendants arguing that their claims were preempted, that the product's label was not misleading as a matter of law, and that the product's back label cured any ambiguity created by the front label. In opposing Defendants' motion to dismiss, Plaintiffs then requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies. In these circumstances, it was not an abuse of discretion to deny leave to amend. *Cf. Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 613-14 (2d Cir. 2020) (summary order) (affirming denial of leave to amend where plaintiffs "requested, in passing, that they should have an opportunity to amend their complaint . . . but did not otherwise suggest how they would amend [their] claims").

We have considered the remaining arguments advanced by Plaintiffs and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
