**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued:  March 22, 2016　　Decided: July 21, 2016)

Docket No. 15-3462-cv

_____

ORCHARD HILL MASTER FUND LTD., FORE MULTI STRATEGY MASTER FUND, LTD., SILVERBACK ARBITRAGE MASTER FUND LIMITED, SMI DEFENSIVE LP, CAPITAL VENTURES INTERNATIONAL,

*Plaintiffs-Appellants*,

FAIRWAY FUND LIMITED,

*Plaintiff*,

- v. -

SBA COMMUNICATIONS CORPORATION,

*Defendant-Appellee*.

_____

Before:　　JACOBS and HALL, *Circuit Judges*, and RESTANI, *Judge*.[*]

Appeal from a judgment of the United States District Court for the Southern District of New York (Batts, *J.*) dismissing plaintiffs' breach of contract claim. Plaintiffs held two convertible notes issued by defendant. The notes contained a conversion option that allowed the holders to forego repayment of

---

[*] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

the principal in exchange for equity shares or cash in the defendant company. Plaintiffs converted their notes into equity and/or cash. After the conversion, defendant did not pay plaintiffs the accrued interest on the notes. Plaintiffs brought suit alleging breach of contract. The district court dismissed the claim. We affirm the district court's dismissal because the plain terms of the indentures do not entitle the plaintiffs to the final interest payment they seek.

AFFIRMED.

HARRY N. NISKA, John B. Orenstein (on the brief), Ross Orenstein & Baudry LLC, Minneapolis, MN, *for Plaintiffs-Appellants Orchard Hill Master Fund Ltd., Fore Multi Strategy Master Fund, Ltd., Silverback Arbitrage Master Fund Limited, Smi Defensive LP, and Capital Ventures International.*

JOSEPH P. DAVIS III, James M. Vant and William Wargo (on the brief), Greenberg Traurig, LLP, Boston, MA, *for Defendant-Appellee SBA Communications Corporation.*

HALL, *Circuit Judge*:

Orchard Hill Master Fund Ltd., Fore Multi Strategy Master Fund, Ltd.,

Silverback Arbitrage Master Fund Limited, Smi Defensive LP, and Capital

Ventures International (collectively, "plaintiffs") appeal from an October 1, 2015

judgment entered in the Southern District of New York (Batts, *J.*) granting SBA

Communications Corporation's ("SBAC") motion to dismiss for failure to state a

claim. Plaintiffs owned two convertible notes issued by SBAC. After converting the notes into equity and/or cash, plaintiffs brought this breach of contract claim, alleging that SBAC failed to pay the interest owed on the underlying notes following the conversion. The district court dismissed the claim with prejudice, holding that there was no reasonable interpretation of the underlying contract that entitled the plaintiffs to both the benefits of the conversion and the final interest payment. On appeal, plaintiffs argue that the contract unambiguously entitled them to the post-conversion interest payment. In the alternative, plaintiffs argue that the contract was ambiguous and that the court should have conducted fact finding to allow the plaintiffs to submit evidence of industry custom and usage for similar convertible debt instruments. Plaintiffs also assert that the district court erred by denying plaintiffs the opportunity to amend their complaint. For the reasons stated below, we affirm the district court's dismissal of plaintiffs' complaint.

## I. Background

Plaintiffs held two sets of SBAC issued convertible notes (collectively, "notes"). One set of notes was issued in 2008 and matured in 2013, and the other was issued in 2009 and matured in 2014. The notes were hybrid debt/equity

instruments pursuant to which plaintiffs lent money to SBAC, and in return, plaintiffs received periodic interest payments. Plaintiffs also had the option to convert the notes into SBAC shares or into cash. SBAC issued the notes pursuant to two indentures that were substantively identical to one another except for the applicable interest rates, dates, and offering amounts. The indentures dictated the terms of the notes and the obligations of the parties. Plaintiffs converted their notes into equity shares and/or cash near the date at which the notes were to mature. Plaintiffs assert that under the indentures SBAC was required to pay them interest after the conversions.

### a. Structure of the Interest Payments[1]

Section 2.03(c) of the indentures ("Payment of Interest Clause") states the parties' obligations surrounding interest payments. The provision states in part that:

> Interest shall be payable on [the two Interest Payment dates] of each year . . . to the Person in whose name any Note is registered on the Register at the close of business on any Regular Record Date with respect to the applicable Interest Payment Date, except that the interest payable on the Maturity Date will be paid to the Person to whom the principal amount is paid.

---

[1] The full text of Section 2.03(b) and (c) of the indentures is included in an appendix to this opinion.

J.A. at 46.

Under the indentures, therefore, SBAC was required to pay interest to noteholders on specified dates—Interest Payment Dates—which were scheduled every six months throughout the term of the notes. Two weeks before every Interest Payment Date was a Regular Record Date. The noteholders on the Regular Record Date were entitled to receive the interest payment for the upcoming Interest Payment Date. As noted above, the Payment of Interest Clause creates an exception to this arrangement such that the final interest payment would be paid to the person to whom the principal would be paid.

Section 2.03(b) of the indentures ("Payment on Maturity Provision") describes the parties' obligations if a noteholder declines to convert the notes before the Maturity Date. Section 2.03(b) states:

> The Notes shall mature on [the Maturity Date], unless earlier converted or repurchased in accordance with the provisions hereof. On the Maturity Date, each Holder shall be entitled to receive on such date $1,000 in cash for each $1,000 principal amount of Notes, together with accrued and unpaid interest to, but not including, the Maturity Date.

J.A. at 46.

**b. The Wash Clause and Maturity Exception**

Under the terms of the indentures, plaintiffs had the right to convert their notes at any time up until two trading days before the Maturity Date. J.A. at 79. Plaintiffs refer to the later portion of Section 2.03(c) as the "Wash Clause." The Wash Clause applies to noteholders who convert their notes during the two week period after the Regular Record Date but before the Interest Payment Date. The Wash Clause provides:

> Notwithstanding [the Payment of Interest Clause] any Notes . . . surrendered for conversion after the close of business on the Regular Record Date for an Interest Payment Date but prior to the applicable Interest Payment Date shall be accompanied by payment [from the Holder] . . . of an amount equal to the interest otherwise payable on such Interest Payment Date.

J.A. at 46.

Thus, if a noteholder converts between the Regular Record Date and the Interest Payment Date, the payment by the noteholder under the Wash Clause cancels out the interest payment received by the noteholder on the Interest Payment Date. A noteholder who wishes to avoid the impact of the Wash Clause—and receive both the interest payment and equity shares and/or cash—may choose to hold the note until it receives the interest payment and then convert the note after the Interest Payment Date.

Section 2.03(c)(i) ("Maturity Exception") states that no Wash Clause "payment need be made . . . with respect to conversions after the close of business on [the final Regular Record Date prior to the Maturity Date.]"[2] J.A. at 46. Plaintiffs allege that market convention has developed the Maturity Exception to allow noteholders who want to convert and receive the final interest payment and who would have converted immediately after the Interest Payment Date in other periods, to do so in the Final Period.

### c. Plaintiffs' Conversions

Plaintiffs were noteholders on the final Regular Record Date of the notes' term but converted their notes prior to the Maturity Date. Plaintiffs thus converted their notes during the Final Period. Pursuant to the Maturity Exception to the Wash Clause, plaintiffs did not pay SBAC in the amount of interest payable on the Maturity Date. SBAC did not pay plaintiffs the interest on the notes for the final six month period. Plaintiffs assert that under the plain language and structure of the indentures, SBAC was obligated to pay them interest because they were noteholders on the final Regular Record Date and

---

[2] The text of the two indentures provides actual dates for the final Regular Record Date for each of the notes. J.A. at 46, 136. Plaintiffs refer to the time period between the final Regular Record Date and the Maturity Date as the "Final Period."

received conversion compensation on the Maturity Date. Plaintiffs contend that SBAC has improperly withheld more than $8 million in accrued interest.

### d. Procedural History

Plaintiffs filed suit against SBAC in the Supreme Court of New York, New York County on November 19, 2014. In their complaint, Plaintiffs assert two identical causes of action: a breach of contract claim for each set of notes. One month after suit was filed, SBAC removed the case to federal court. SBAC moved to dismiss the complaint for failure to state a claim. The district court granted the motion, holding that there was no reasonable interpretation of the underlying contract that entitled the plaintiffs to both the benefits of the conversion and the final interest payment. Plaintiffs appeal.

## II. Discussion

### a. Standard of Review

We review *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014). We also review *de novo* a district court's decision to dismiss without leave to amend on the ground that amendment would be futile. *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490

(2d Cir. 2011) (recognizing that although this Court reviews a denial of leave to amend under an abuse of discretion standard, "[w]hen the denial of leave to amend is based on a legal interpretation, such as a determination that amendment would be futile, a reviewing court conducts a *de novo* review").

### b. Relevant Law

The indentures are governed by New York state law. J.A. at 97. Under New York state law, a breach of contract claim must allege; "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). "It is a well-established rule in this Circuit that the interpretation of Indenture provisions is a matter of basic contract law." *Bank of N.Y. Trust Co. v. Franklin Advisers, Inc.*, 726 F.3d 269, 276 (2d Cir. 2013) (internal quotation omitted). At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) (noting that "if a contract is ambiguous . . . , a court has insufficient data to dismiss a complaint for failure to state a claim"). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts."

*Orlander*, 802 F.3d at 294 (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 565 N.Y.S.2d 440, 443 (1990)).

A contract is ambiguous under New York law "if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation omitted). A contract is unambiguous, however, if "the contract language has a definite and precise meaning . . . and concerning which there is no reasonable basis for a difference of opinion." *Id*. (quoting *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010)). We analyze the ambiguity of a provision under the "normal rules of contract interpretation: 'words and phrases should be given their plain meaning' and a 'contract should be construed so as to give full meaning and effect to all of its provisions.'" *Orlander*, 802 F.3d at 295 (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)).

Here, the parties do not dispute that plaintiffs have adequately pled that there was a contract, that plaintiffs performed under the contract, and that the plaintiffs suffered damages. The only issue in dispute is whether, as a matter of law, SBAC's refusal to pay plaintiffs the final interest payment constituted a failure to perform under the indentures. We hold that it was not and affirm the district court's judgment dismissing plaintiffs' complaint.

**c. Analysis**

The full text of Section 2.03(c), the Payment of Interest Clause, requires SBAC to pay interest on a biannual basis to persons who are registered as noteholders on the respective Regular Record Date preceding an Interest Payment Date. J.A. at 46. The Wash Clause specifies that when a noteholder converts the note after the Regular Record Date but before the Interest Payment Date, the noteholder must pay SBAC the amount that the noteholder will receive from SBAC on the subsequent Interest Payment Date. The result is that the payments cancel each other out, and the noteholder does not reap the benefit of receiving both an interest payment and equity/cash from a conversion if the noteholder converts during the two week period before the Interest Payment

Date. The Wash Clause allows interest payments to flow only to those noteholders who remain debtholders until the end of each six month cycle.

The Payment of Interest Clause explicitly alters the designation of the recipient of the final interest payment. The clause states: "the interest payable on the Maturity Date will be paid to the Person to whom the principal amount is paid." *Id.* Thus, the identity of the noteholder on the final Regular Recording Date—the one preceding the Maturity Date—is irrelevant for purposes of the final interest payment because it is the person who is paid the principal amount on the Maturity Date who is entitled to receive the final interest payment. Section 2.03(b), the Payment on Maturity Provision, identifies the person who receives the principal amount. That provision states that the "Notes shall mature on [the Maturity Date], unless earlier converted or repurchased in accordance with the provision hereof [and that] each Holder shall be entitled to receive on such date $1,000 in cash for each $1,000 principal amount of Notes, together with accrued and unpaid interest." *Id.* Read in conjunction with the Interest Payment Clause, the Payment on Maturity Provision unambiguously directs SBAC to pay the final interest payment and the principal to the holder of a note that was not "earlier converted or repurchased." *Id*. Here, because plaintiffs had earlier converted the

notes, prior to the Maturity Date, they were not noteholders on the Maturity Date and are not entitled on that basis, therefore, to the principal amount or the final interest payment. With respect to who may receive the final interest payment, the indentures are unambiguous.

Unsurprisingly, plaintiffs disagree and advance several arguments for why they are entitled to the final interest payment. First, plaintiffs contend that the Wash Clause and the Maturity Exception, when read in conjunction with the entirety of the Payment of Interest Clause, entitle plaintiffs to the final interest payment. Plaintiffs argue that the only reasonable interpretation of Section 2.03(c) is that SBAC is obligated to pay interest for conversions made after the Final Regular Recording Date but before the Maturity Date. Otherwise, plaintiffs argue, the Wash Clause would be superfluous and the Maturity Exception would be doubly superfluous. Plaintiffs contend that the Maturity Exception to the Wash Clause would be unnecessary if the Payment of Interest Clause did not require SBAC to pay the final interest payment after plaintiffs converted because, if this were so, the Wash Clause would not apply at all, and thus, an exception to it would be equally redundant. To avoid reading the indentures in a way that creates redundant clauses, plaintiffs assert, we should interpret the Payment of

Interest Clause as requiring SBAC to pay the final interest payment when plaintiffs converted in the Final Period and interpret the Maturity Exception to the Wash Clause as exempting plaintiffs from having to pay the reciprocal amount to SBAC in a wash payment.

We disagree. Although clever, plaintiffs' interpretation of the indentures is unreasonable because it rests on a misunderstanding of the interplay between the Wash Clause and the Payment of Interest Clause. The Wash Clause begins with the phrase: "Notwithstanding the foregoing." J.A. at 46. The "foregoing" in this phrase refers to the Payment of Interest Clause, which describes the interest payment rules. Thus, "notwithstanding" the interest payment rules—which include the different rule for the final interest payment on the Maturity Date— the Wash Clause applies. The Wash Clause, therefore, applies to every conversion that occurs between a Regular Recording Date and an Interest Payment Date, including conversions that occur during the Final Period. The Wash Clause obligates all noteholders who convert during one of these periods to pay SBAC the "amount equal to the interest otherwise payable," J.A. at 46, "notwithstanding" SBAC's obligation to pay noteholders interest in the first instance. Thus, under the Wash Clause, the final Regular Recording Date and

final Interest Payment Date trigger plaintiffs' obligations, whereas under the Payment of Interest Clause, the final Regular Recording Date and final Interest Payment Date (i.e. the Maturity Date) do not trigger SBAC's corresponding interest payment obligations. This dynamic creates a one-sided obligation for a noteholder who converts during the Final Period. Rather than being redundant, the Maturity Exception is the simplest mechanism, within this particular interest payment structure, to ensure SBAC does not receive a windfall payment from noteholders. Contrary to plaintiffs' assertions, this is the only reasonable interpretation of the Wash Clause and the Maturity Exemption.

Plaintiffs' proposed reading, moreover, would allow noteholders who convert in the Final Period to reap the additional benefit of obtaining interest plus cash and/or stock while noteholders who convert in any other period would only get cash and/or stock. Plaintiffs contend that their reading does not grant additional benefits to a noteholder who converts in the Final Period and is consistent with the structure of the indentures because in every other period noteholders have the option of waiting until the day after the Interest Payment Date to convert in order to receive both an interest payment plus cash and/or stock. We are unpersuaded. As described above, the indentures structure the

interest payments in six-month intervals whereby a noteholder receives interest for holding a note through a six-month cycle. That a noteholder can convert anytime during the subsequent cycle does not alter the plain language of the Payment of Interest Clause or the structure of the interest payments.

Similarly, we are unpersuaded by plaintiffs' argument that the following language in the notes obliges SBAC to pay the final interest payment: SBAC "will pay interest on the Notes . . . to the Persons who are registered holders of Notes at 5:00 p.m., New York City time, on the [Regular Record Date] next preceding the Interest Payment Date even if Notes are canceled after the record date and on or before the Interest Payment Date, except as otherwise provided in the Indenture." J.A. at 106, 197. Because this language does not create any new or different obligations than those in the indentures and explicitly defers to the indentures if there is a contradiction between the notes and the indentures, we rely on the plain language of the indentures when analyzing the respective obligations of the parties.

Focusing on the conversion of their notes, plaintiffs further argue that the district court mischaracterized when the conversion of their notes took place and erred in not finding that they were the party "to whom the principal amount is

paid" thus entitling them under the Payment of Interest Clause and Payment on Maturity Provision to the final interest payment. J.A. at 46. This argument turns on the distinction throughout the indentures between surrendering a note for conversion and the actual conversion itself and relies on an alternative reading of the term "principal." Plaintiffs assert that although they surrendered their notes for conversion prior to the Maturity Date, the act of conversion occurred on the Maturity Date, and thus the notes were not "earlier converted." J.A. at 46. They argue, moreover, that because the equity a noteholder receives upon conversion is calculated based on a conversion rate that is premised on the principal amount, their conversion on the Maturity Date was, in fact, the payment of the principal amount.

Plaintiffs' proposed interpretations of the Payment of Interest Clause and Payment on Maturity Provision are unreasonable. Article 10 of the Indentures, entitled Conversion of Notes, defines "Conversion Date" as "[t]he date the Holder satisfies the foregoing requirements." J.A. at 82. The "foregoing requirements" are set forth in a list of steps—including submitting notice, fulfilling obligations under the Wash Clause, and paying transfer taxes—which can be satisfied by a noteholder unilaterally. *Id.* The Conversion Date is,

therefore, the date the noteholder effectively submits its notes for conversion. Plaintiffs' argument that the notes were "converted" on a later date when the equity shares were distributed to the plaintiffs is incorrect. Furthermore, that the value of the equity shares is dependent on the principal amount does not contradict or change the fact that when a noteholder exercises the right to convert a note, the noteholder relinquishes the note—and thus the right to the principal and interest—in exchange for equity shares or cash. The principal is not paid during conversion, but rather transformed from a principal amount to equity shares or cash. Plaintiffs cannot overcome this fact by ignoring it and proposing to equate the value of the principal as a standard for conversion with the principal amount itself. The indentures are unambiguous and do not entitle plaintiffs to the final interest payment.[3]

---

[3] The district court further relied on Section 10.02(g) of the Indentures and *Columbia Gas Systems, Inc. v. United States*, 473 F.2d 1244 (2d Cir. 1973), to conclude that "upon conversion, the unpaid interest is considered to have been paid through the stock or cash received by the converting Holder," and, thus, that plaintiffs, as converting noteholders, do not have an entitlement to any interest payments. *Orchard Hill Master Fund Ltd. v. SBA Commc'ns. Corp.*, 2015 WL 5841232 (S.D.N.Y., Oct. 1, 2015) * 8–9. While we agree that Section 10.02(g) supports the general proposition that, upon conversion, interest stops accruing and SBAC is not required to pay ongoing interest payments, because we determine here that the text of the Payment of Interest Clause is dispositive of

Finally, plaintiffs contend that the district court erred by dismissing their complaint without granting them leave to amend. Plaintiffs argue that because the district court dismissed the complaint, in part, on the basis that plaintiffs failed to support their argument relating to market convention and industry practice with anything other than conclusory allegations, plaintiffs should be allowed to re-plead more specific facts to cure this pleading defect. Plaintiffs, however, do not explain what market convention evidence they would submit in their amended complaint to support their market convention theory. Regardless, because we have determined that the plain language and structure of the indentures unambiguously foreclose plaintiffs' right to the final interest payment, we agree with the district court that re-pleading would be futile. *See Thea v. Kleinhandler*, 807 F.3d 492, 496–97 (2d Cir. 2015) ("Proposed amendments are futile if they would fail to cure deficiencies or state a claim under Rule 12(b)(6)."(internal quotation omitted)). We affirm the district court's denial of plaintiffs' motion for leave to re-plead.

**III.   Conclusion**

For the reasons stated above, the judgment of the district court is affirmed.

---

whether plaintiffs' are entitled to the final interest payment, we do not analyze Section 10.02(g).

# **Appendix**

SECTION 2.03 <u>Date and Denomination of Notes: Payment at Maturity; Payment of Interest</u>.

    (b) <u>Payment at Maturity</u>. The Notes shall mature on May1, 2013, unless earlier converted or repurchased in accordance with the provisions hereof. On the Maturity Date, each Holder shall be entitled to receive on such date $1,000 in cash for each $1,000 principal amount of Notes, together with accrued and unpaid interest to, but not including, the Maturity Date. With respect to Global Notes, principal and interest will be paid to the Depositary in immediately available funds. With respect to any certificated Notes, principal and interest will be payable at the Company's office or agency in New York City, which initially will be the office or agency of the Trustee located at 100 Wall Street, Suite 1600, New York, New York 10005, Attention: Corporate Trust Administration and at the Company's office or agency in Miami, Florida, which initially will be the office or agency of the Trustee located at 200 South Biscayne Blvd, Suite 1870, Miami, Florida 33131, Attention: Corporate Trust Administration. If the Maturity Date is not a Business Day, payment shall be made on the next succeeding Business Day, and no additional interest shall be accrue thereon.

    (c) <u>Payment of Interest</u>. Interest on the Notes will accrue at the rate of 1.875% per annum, from May 16, 2008 until the principal thereof is paid or made available for payment. Interest shall be payable on May 1 and November 1 of each year (each, an "**Interest Payment Date**"), commencing November 1, 2008, to the Person in whose name any Note is registered on the Register at the close of business on any Regular Record Date with respect to the applicable Interest Payment Date, except that the interest payable on the Maturity Date will be paid to the Person to whom the principal amount is paid. Notwithstanding the foregoing, any Notes or portion thereof surrendered for conversion after the close of business on the Regular Record Date for an Interest Payment Date but prior to the applicable Interest Payment Date shall be accompanied by payment, in immediately available funds or other funds acceptable to the Company, of an amount equal to the interest otherwise payable on such Interest Payment Date on the principal amount being converted; <u>provided</u>  that no such payment need be made:

        (i)  with respect to conversions after the close of business on April 15, 2013;

        (ii) with respect to conversions during such period commencing on the date the Company has given notice of a Fundamental Change pursuant to Section 10.01(4) to, and including, the second Scheduled Trading Day immediately preceding the corresponding Fundamental Change Repurchase Date: or

        (iii) with respect to any overdue interest, if overdue interest exists at the time of conversion with respect to such Notes.