17-808-cv
*Great Minds v. FedEx Office & Print Servs., Inc.*

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term, 2017

(Submitted: October 3, 2017　　　Decided: March 21, 2018)

Docket No. 17-808-cv

GREAT MINDS,

*Plaintiff-Appellant,*

–v.–

FEDEX OFFICE AND PRINT SERVICES, INC.,

*Defendant-Appellee.*

B e f o r e :

RAGGI, HALL, and CARNEY, *Circuit Judges*.

Appeal from a judgment entered in the Eastern District of New York (Hurley, *J.*) dismissing this copyright infringement action filed by Plaintiff-Appellant Great Minds against Defendant-Appellee FedEx Office and Print Services, Inc. ("FedEx"). FedEx allegedly violated Great Minds' copyright by reproducing Great Minds' educational materials at the request of school districts, which sought to use the materials for noncommercial purposes under Great Minds' non-exclusive public license. The public license does not explicitly address whether licensees may engage third parties to provide commercial services that assist the licensees in furthering their own noncommercial uses. We hold that a copyright holder must state in its license any

limitation it might wish to impose precluding such an engagement. We decline to infer any such limitation in Great Minds' public license, and therefore AFFIRM the District Court's judgment.

AFFIRMED.

——————

Rhett O. Millsaps II, Law Office of Rhett O. Millsaps II, New York, New York; Eric M. Lieberman, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York, New York, *for Plaintiff-Appellant*.

Mark D. Taylor & Nicholas O. Kennedy, Baker & McKenzie LLP, Dallas, Texas; Michael A. Pollard, Baker & McKenzie LLP, Chicago, Illinois, *for Defendant-Appellee*.

——————

SUSAN L. CARNEY, *Circuit Judge*:

Plaintiff-Appellant Great Minds appeals from the March 21, 2017 dismissal under Federal Rule of Civil Procedure 12(b)(6) of its copyright infringement action against FedEx Office and Print Services, Inc. ("FedEx") in the United States District Court for the Eastern District of New York (Hurley, *J.*). We find that Great Minds' public license does not explicitly address whether licensees may engage third parties to assist them in exercising their own noncommercial use rights under the license. We hold that, in view of the absence of any clear license language to the contrary, licensees may use third-party agents such as commercial reproduction services in furtherance of their own permitted noncommercial uses. Because FedEx acted as the mere agent of licensee school districts when it reproduced Great Minds' materials, and because there is no dispute that the school districts themselves sought to use Great Minds' materials

2

for permissible purposes, we conclude that FedEx's activities did not breach the license or violate Great Minds' copyright. We therefore AFFIRM the District Court's judgment.

## BACKGROUND[1]

Great Minds is a non-profit organization that designs educational materials. These include a copyrighted curriculum called "Eureka Math" (the "Materials"). Great Minds sells the Materials in book form and also releases them to the public without charge but subject to a "public license" (the "License"), using a template that is made available by a group called Creative Commons.[2] The License allows "[a]ny member of the public [to] download, reproduce, and distribute [the Materials] pursuant to the terms of the [] License, which is made available to all on the same terms without the need to negotiate." Appellant's Br. 2.

The License provides that "[e]very recipient of the [Materials] automatically receives an offer from the Licensor to exercise the Licensed Rights under the terms and conditions of this [] License," and grants each "individual or entity exercising the Licensed Rights" what it describes as a "worldwide, royalty-free, non-sublicensable, non-exclusive, irrevocable license to . . . reproduce and Share the [Materials], in whole or in part, for NonCommercial purposes only." App'x 30–31. It defines "NonCommercial purposes" to mean purposes "not primarily intended for or directed towards commercial advantage or monetary compensation." *Id.* at 30.

---

[1] This factual overview is drawn from Great Minds' complaint and the attached exhibits. On appeal from a Rule 12(b)(6) dismissal, we must assume Great Minds' factual allegations to be true and draw all reasonable inferences in Great Minds' favor. *United States v. Am. Med. Response, Inc.*, 865 F.3d 71, 78 (2d Cir. 2017).

[2] Great Minds used the "Creative Commons Attribution—Non Commercial—Share Alike 4.0 International Public License," which is available online at https://creativecommons.org/licenses/by-nc-sa/4.0/legalcode.

In the complaint, Great Minds characterizes these provisions as amounting to an "explicit limitation of the License to noncommercial use requir[ing] that commercial print shops . . . negotiate a license and pay a royalty to Great Minds if they wish to reproduce the Materials . . . at the request of their [paying] customers." *Id*. at 10 ¶ 14. Great Minds incidentally avers that it uses the revenue that it receives from royalties and direct sales to fund the development of new curricular materials. *Id.*

In late 2015 and early 2016, Great Minds discovered that FedEx stores in Michigan and New York reproduced the Materials, without Great Minds' authorization, in the course of their ordinary, for-profit business. After each such discovery, Great Minds sent a letter to FedEx demanding that FedEx either negotiate a royalty-bearing license with it or cease commercial reproduction of the Materials. FedEx refused, arguing that it had permissibly reproduced the Materials at the request of school districts, which sought to use the Materials for noncommercial purposes under the License.

Great Minds filed the instant lawsuit in March 2016, asserting a single claim of copyright infringement against FedEx. The District Court dismissed the action under Rule 12(b)(6), concluding that the unambiguous terms of the License permit FedEx to provide for-profit copying services on behalf of a school district exercising noncommercial use rights under the License. *Great Minds v. FedEx Office & Print Servs., Inc.*, No. 16-CV-1462, 2017 WL 744574 (E.D.N.Y. Feb. 24, 2017).

## DISCUSSION

FedEx concedes that its copying services are commercial in nature, and that its reproduction of the Materials would therefore be impermissible under the License if FedEx were acting as a direct licensee. Appellee's Br. 25–26. Great Minds, in turn, has not alleged that the school districts' use of the Materials exceeded the scope of the License. The question we must answer is whether the License permits school districts to

4

use FedEx's services in *furtherance* of their own noncommercial use of the Materials under the License. On de novo review of the License, we find it silent on that point. We hold that, under long-established principles of agency law, a licensee under a non-exclusive copyright license may use third-party assistance in exercising its license rights unless the license expressly provides otherwise. We therefore affirm the District Court's conclusion that FedEx did not infringe Great Minds' copyright. FedEx reproduced the Materials at the direction of Great Minds' authorized licensees, and nothing in the License prohibited the licensees from seeking FedEx's services.

## I.    Legal standards

A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To state a claim for copyright infringement, a plaintiff must allege that the plaintiff owned a valid copyright and the defendant "violat[ed] one of the exclusive rights that 17 U.S.C. § 106 bestows upon [a] copyright holder." *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016). A copyright owner waives the right to sue, however, for uses of copyrighted material that are authorized by a non-exclusive license. *See Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 235–36 (2d Cir. 2008); *Tasini v. N.Y. Times Co.*, 206 F.3d 161, 170–71 (2d Cir. 2000).

Copyright licenses are generally construed according to principles of contract law. *See Chapman*, 546 F.3d at 236; 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.08 (2017). "In a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous," *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011), which is a question of law for the court, *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). Under New

5

York law,[3] courts must consider how the contract would be understood "by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs . . . and terminology as generally understood in the particular trade or business." *Orchard Hill*, 830 F.3d at 156–57. If "specific [contract] language is susceptible of two reasonable interpretations," the contract is ambiguous as a matter of law. *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014) (internal quotation marks omitted).

## II.     Analysis

On de novo review of the complaint, we identify no express License language that would either permit or prohibit licensees' use of third-party services in furtherance of their authorized purposes. That silence does not produce an ambiguity, however. Applying well-established agency principles, we conclude that licensees may use third-party assistance in exercising their rights under non-exclusive copyright licenses unless the license clearly states otherwise.

### A.     The text of the License

#### 1.     *The meaning of "reproduce and Share"*

The License authorizes licensees to "reproduce and Share" the Materials for noncommercial purposes. App'x 31. FedEx argues that, because the License defines "Share" to mean "provid[ing] material to the public by any means or process"— including "reproduction"—FedEx's provision of commercial copying services falls within the licensee school districts' right to "reproduce and Share" the Materials. *Id. at* 30 (emphasis omitted). This argument plucks out of context the operative License language, however. The License specifies more fully that Great Minds' licensees may

---

[3] The parties do not dispute the District Court's determination that New York law governs in this case.

"Share" by "provid[ing] material to the public by any means or process *that requires permission under the Licensed Rights.*" *Id.* (emphasis added). "Licensed Rights," in turn, are "limited to all Copyright and Similar Rights . . . that the Licensor has authority to license." *Id.* Thus, the term "Share" encompasses the various types of reproduction and dissemination activities that require permission from the copyright holder; it does not expressly describe a right to enlist the services of third parties in performing those activities.

> 2.      *The "downstream recipients" provision*

Great Minds agrees that, under the License, school districts may themselves "reproduce and Share" the Materials. It maintains, however, that the school districts' authority to use commercial reproduction services for the same purpose is limited by the License's "downstream recipients" provision. Under that provision, "[e]very recipient of the [Materials] automatically receives an offer . . . to exercise the Licensed Rights under the terms and conditions of this [] License." *Id.* at 31. In Great Minds' view, FedEx was a "recipient" of the Materials that received an "offer" to exercise the Licensed Rights. It therefore acted as a licensee in its own right when it reproduced the Materials for profit, which violated the terms of the License and thereby made FedEx liable for copyright infringement.

We find this argument unpersuasive. Great Minds fails to account for the mundane ubiquity of lawful agency relationships, in which "one person, to one degree or another . . . , acts as a representative of or otherwise acts on behalf of another person." Restatement (Third) of Agency § 1.01 cmt. c (2006); *see also Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010) (noting the "fundamental principle that . . . the acts of agents, . . . while acting within the scope of their authority[,] are presumptively imputed to their principals"). The concept of an agency relationship is a sine qua non in the world of entities like corporations and public school districts, which have no

7

concrete existence. As the New York Court of Appeals has commented, "Of necessity, [such entities] must act solely through the instrumentality of their officers or other duly authorized agents." *Kirschner*, 15 N.Y.3d 446 at 465. (alterations omitted). If a school district decides to incorporate Great Minds' Materials into the standard curriculum, the teachers and administrative staff who receive, reproduce, and disseminate the Materials do so within the scope of their employment, as agents for the school district. They act as extensions of the school district, and therefore act pursuant to the school district's license rights.

Under Great Minds' reading of the License, each teacher and administrator who handles the Materials is a "downstream recipient" who acts as an independent licensee, even if their use of the Materials is compelled by the terms of their employment. If a license were intended to achieve such a radical result, we would expect a clear statement in the license to that effect. Great Minds' public license contains no such statement. We conclude, therefore, that the "downstream recipients" provision cannot reasonably be read to apply within the scope of employment relationships.

By the same token, we conclude that Great Minds' licensees may rely on *non-employee* agents in carrying out permitted uses without converting those agents into independent licensees. The License text provides no basis for distinguishing between a school that directs its employees to make copies on the school's machines and a school that achieves an identical result by enlisting a temporary independent contractor—or a commercial duplication service. Our conclusion in this regard is no outlier. *See, e.g., Automation By Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 757 (7th Cir. 2006) (reasoning that if a license "allowed Raybestos to make photocopies of [certain] designs[,] . . . Raybestos could certainly take the designs to a Kinko's photocopy shop to have them copied" there); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 44–45 (1st Cir. 2010) ("When . . . there is no indication that a [licensor] has restricted the

licensee's ability to use third parties in implementing the license, the license is generally construed to allow such delegation.").

Great Minds could, if it wished, draft a public license that specified whether, and under what circumstances, a licensee may rely on employees or non-employee agents in reproducing or otherwise engaging with the Materials. But Great Minds included no such specification in the license at issue here. As written, the License cannot reasonably be read to convey any such intention. *See Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 487 (2d Cir. 1998) ("[T]he party seeking exception or deviation from the meaning reasonably conveyed by the words" of a license "should bear the burden of negotiating for language that would express the limitation or deviation.").

> 3.     *The reservation of rights*

In a last gasp, Great Minds offers a final textual argument: the License "specifically reserves Great Minds' right to collect royalties for *all commercial uses*," and this phrase must be read to include the commercial reproduction services that FedEx provided to its school district clients.[4] Appellant's Br. 26 (emphasis added). We agree with the District Court's reading, however, that "the unambiguous import of this provision is to reserve [Great Minds'] right to collect royalties from a licensee if the *licensee* exceeds the scope of the license by, for example, selling copies of the Materials." *Great Minds*, 2017 WL 744574, at *5 (emphasis in original). Great Minds' argument has little persuasive force, as it merely begs the question whether FedEx should properly be considered a licensee or an agent of the licensee school districts.

---

[4] The relevant provision reads: "To the extent possible, [Great Minds] waives any right to collect royalties from You for the exercise of the Licensed rights . . . . In all other cases [Great Minds] expressly reserves any right to collect such royalties, including when the [Materials are] used other than for NonCommercial purposes." App'x 31.

9

B.      Great Minds' remaining arguments

We address here two additional arguments made by Great Minds, both of which miss the mark.

First, Great Minds unavailingly points to *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008), in support of its supposition that, irrespective of whether FedEx acted on behalf of the school districts, FedEx is liable for infringement because the copying company acted *volitionally* in reproducing the Materials. *Cartoon Network* involved a claim of direct infringement against Cablevision Systems Corporation for offering customers a digital video recording system through which customers made unauthorized reproductions of copyrighted works such as television programs. *See id.* at 123. In identifying "*who* made [an unauthorized] copy," our Court looked to the "volitional conduct that cause[d] the copy to be made," and concluded that the customer who made the unauthorized reproduction—not the cable company providing the technology—properly bore the liability for direct infringement. *Id.* at 130–31 (emphasis in original). The relevant question here, however, is not whether FedEx engaged in volitional conduct when it photocopied the Materials at the school districts' request, but whether the License permits school districts to request those copies at all. We conclude that it does, and nothing in *Cartoon Network* is to the contrary.

Great Minds next flags two copyright infringement decisions that differentiated between a business's commercial conduct in reproducing copyrighted works and a student's subsequent use of those same materials for educational purposes, and urges that they compel a liability finding here. *See Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381 (6th Cir. 1996); *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991). Unlike the defendants in *Princeton* and *Basic Books*, FedEx sold the school districts its copying *services*, not ready-made copies of the Materials themselves. Moreover, those cases concern the proper application of the "fair use"

10

defense, which requires a court to consider the "purpose and character" of each defendant's use of the copyrighted materials, "including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1); *see Princeton*, 99 F.3d at 1385–91; *Basic Books*, 758 F. Supp. at 1529–35. For purposes of this appeal, however, FedEx has disclaimed reliance on the fair use defense, and, given our reliance on agency principles and the text of the License to reach our conclusion, we find these cases inapt.

## CONCLUSION

In sum, Great Minds' non-exclusive public license does not expressly preclude licensee school districts from engaging third parties, including commercial third parties, in furtherance of their rights under the License. Absent any such limitation, licensees may rely on services provided by third-party agents when exercising their license rights. We conclude that the License unambiguously permitted school districts to engage FedEx, for a fee, to reproduce the Materials. Great Minds has therefore failed to state a plausible claim of copyright infringement against FedEx. We accordingly **AFFIRM** the judgment of the District Court.