23-14-cv
*Phillips 66 Co. v. Marine Petrobulk Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of December, two thousand twenty-three.

PRESENT:    John M. Walker, Jr.,
                      Steven J. Menashi,
                      Eunice C. Lee,
                                *Circuit Judges.*

_____

PHILLIPS 66 CO.,

          *Plaintiff-Appellant*,

          v.                                                                    No. 23-14-cv

MARINE PETROBULK LTD.,

          *Defendant-Appellee*.

_____

*For Plaintiff-Appellant*:     JASON E. WILLIAMS, Bissinger, Oshman, Williams & Strasburger LLP, Houston, TX (John B. Strasburger, Bissinger, Oshman, Williams & Strasburger LLP, Houston, TX, and Jacob Gardener, Walden Macht & Haran LLP, New York, NY, *on the brief*).

*For Defendant-Appellee*:     ROBERT A. O'HARE JR. (Andrew C. Levitt, *on the brief*), O'Hare Parnagian LLP, New York, NY.

Appeal from a judgment entered in the United States District Court for the Southern District of New York (Cote, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **REVERSED IN PART** and **AFFIRMED IN PART**.

Plaintiff-Appellant Phillips 66 Co. appeals the judgment of the district court dismissing its breach of contract, breach of implied covenant, and unjust enrichment claims against Marine Petrobulk Ltd. Phillips 66's claims arise out of an alleged invoicing error. Phillips 66 sold marine fuel to Marine Petrobulk in a series of 37 transactions. Phillips 66 issued an invoice after each transaction, which Marine Petrobulk paid. After the final transaction, Phillips 66 discovered that it had mistakenly underbilled Marine Petrobulk by about $4 million because it had used the wrong conversion rate to convert the contract price—set as a price per metric ton—to a price per barrel. Upon discovering the error, Phillips 66 issued revised invoices. Marine Petrobulk refused to pay the increased amount, claiming that the original invoices had been calculated correctly. Phillips 66 filed suit and this appeal followed.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**BACKGROUND**

Between August 2020 and April 2021, Phillips 66 sold very low sulfur fuel oil ("VLSFO") to Marine Petrobulk in 37 separate transactions. The transactions were governed by Phillips 66's General Terms and Conditions (the "GTCs") and Non-Crude Oil Products Marine Provisions. The GTCs require the application of New York law. For each transaction, Phillips 66 issued a "Confirmation" that set out the terms of the transaction.

The Confirmations did not specify a fixed price. Instead, each Confirmation set forth a pricing formula, which generally appeared as follows:

> 100.0000% of the PLATTS ASIA/ARAB MKT - GASOIL 10PPM @ SINGAPORE - AVERAGE Index, for the Pricing Period defined as the day of the Completion of Loading (the "Pricing Event") (Pricing Event excludes weekends & holidays) including a differential of –/+ [Dollar Amount] USD per Metric Ton(s) in Air.

J. App'x 145-246 (Confirmations at 1). Under this formula, the price equaled the Platts Singapore Gasoil 10ppm index ("Platts Gasoil index") price as adjusted by a differential. The Platts Gasoil index is a publicly available commodity index for gasoil—which is a different type of fuel than VLSFO. The Platts Gasoil index reports prices in dollars per barrel of gasoil, with a listed conversion rate of 7.45 barrels per metric ton of gasoil. The differential varied by transaction based on market conditions and could be a discount or a premium in relation to the index price, or it could be zero. The differential was always stated in the Confirmation in dollars per metric ton.

According to Phillips 66, this pricing formula set forth a price per metric ton of VLSFO: The contract price was equal to the Platts Gasoil index price converted to a price per metric ton using the 7.45 rate and adjusted by the differential. However, because Marine Petrobulk requested to be invoiced in barrels, Phillips

3

66 converted the contract price into a price per barrel in its invoices to Marine Petrobulk.

In its original invoices, Phillips 66 converted the contract price from metric tons to barrels using the same conversion rate—7.45 barrels per metric ton of gasoil—that it had used to convert the Platts Gasoil index price. Phillips 66 now argues that this calculation was erroneous and that it should have used the VLSFO barrels-per-metric-ton conversion rate rather than the gasoil conversion rate to calculate the final contract price. VLSFO is denser than gasoil, so one metric ton of VLSFO fits into fewer barrels than does one metric ton of gasoil.[1] Because Phillips 66 used the higher gasoil conversion rate in the original invoices to convert the price per metric ton of VLSFO into a price per barrel—which yielded a lower price per barrel than the VLSFO conversion rate would yield—Phillips 66 billed Marine Petrobulk at a lower price for the same quantity of VLSFO than it would have if it had billed Marine Petrobulk in metric tons.

Some time after Phillips 66 issued the final invoice, Phillips 66 discovered its alleged error. Phillips 66 then issued revised invoices that used the VLSFO conversion rate to convert the price per metric ton into a price per barrel. Marine Petrobulk refused to pay the revised invoices; it maintains that the original invoices were calculated correctly under the terms of the contract.

The district court dismissed Phillips 66's claims, holding that "the [p]arties agreed to use the rate of 7.45 as the rate to convert the price per barrel into the price per metric tons" and that, "[m]athematically, the same rate must be applied to reconvert metric tons into barrels." *Phillips 66 Co. v. Marine Petrobulk Ltd.*, No. 22-CV-1121, 2022 WL 17417260, at *3 (S.D.N.Y. Dec. 5, 2022). In fact, mathematics does not require that the same rate be used to convert metric tons of VLSFO into barrels that was used to convert metric tons of gasoil into barrels. We reverse the

---

[1] Phillips 66 alleges that the barrels-per-metric-ton conversion rate for VLSFO is between 6.38 to 6.73, depending on the particular shipment.

4

district court's dismissal of the breach of contract claim, but we affirm the dismissal of the implied covenant and unjust enrichment claims. We conclude that Phillips 66 plausibly alleged that the contract set forth a price per metric ton of VLSFO and that accordingly the VLSFO conversion rate should have been used to invoice Marine Petrobulk.

## DISCUSSION

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) (internal quotation marks omitted).

To survive a motion to dismiss, a "complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Green v. Dep't of Educ.*, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Charles v. Orange County*, 925 F.3d 73, 81 (2d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Green*, 16 F.4th at 1077 (internal quotation marks omitted).

## I

Phillips 66 first argues that Marine Petrobulk breached the parties' contract by refusing to pay the revised invoices that reflect the agreed-upon price. According to Phillips 66, the Confirmations set out a price per metric ton of VLSFO. To convert that contract price to a price per barrel, the barrels-per-metric-ton conversion rate of the fuel sold—VLSFO—must be used. Phillips 66's use of the gasoil conversion rate resulted in Marine Petrobulk being billed for, and paying, a price that was lower than the contract price.

5

"Under New York state law, a breach of contract claim must allege: '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)). "[T]he first principle of contract interpretation is that where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 94 (2d Cir. 2021) (internal quotation marks omitted); *see also* N.Y. U.C.C. § 2-202. "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous" as to the issue disputed by the parties. *Orchard Hill*, 830 F.3d at 156.

"Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Id.* (quoting *Orlander*, 802 F.3d at 294). A contract is ambiguous when it "suggest[s] more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Glob. Reinsurance*, 22 F.4th at 94 (internal quotation marks omitted). A contract is not "made ambiguous simply because the parties urge different interpretations," *id.* (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)), and we will not find a contract ambiguous when "the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning," *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 32 (2d Cir. 2016) (internal quotation marks and alteration omitted). Finally, in interpreting a contract under New York law, we aim to "give full meaning and effect to all of its provisions" and to avoid an interpretation that "render[s] … [a] clause superfluous or meaningless." *LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (quoting *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121, 124 (2d Cir. 2003)).

We conclude that Phillips 66 has plausibly alleged a breach of contract claim.[2] We agree with the district court that "the Confirmations govern the contract price." *Phillips 66 Co.*, 2022 WL 17417260, at *3. But we disagree that Phillips 66 has failed to state a breach of contract claim. The Confirmations set forth a price per metric ton of VLSFO. As Phillips 66 argues, converting that price to a price per barrel using the gasoil conversion rate alters the agreed-upon price because gasoil and VLSFO have different densities.

## A

First, the Confirmations govern the contract price. Each Confirmation states that "[t]his Transaction shall be governed by the terms set forth in this confirmation and the [GTCs and Non-Crude Oil Products Marine Provisions]." J. App'x 145-246 (Confirmations at 3). Each Confirmation further states that "Phillips 66 Company does not accept any different or additional provisions or

---

[2] Phillips 66 argued before the district court and in its appellate brief that the audit provision in the GTCs gives Phillips 66 the right to revise its invoices for a two-year period. The district court disagreed, holding that because the audit provision gives each party only the "right to audit the books and records *of the other Party*," it "does not allow a party to revise its own records and seek to enforce them under the contract." *Phillips 66 Co.*, 2022 WL 17417260, at *3; *see* App'x 34. We do not reach this issue here. Whatever the correct interpretation of the audit provision, the provision is not necessary to Phillips 66's claim for breach of contract. As the parties conceded at oral argument, Phillips 66's breach of contract claim turns on what the agreed-upon price was and whether Marine Petrobulk paid that price—not on the audit provision. *See* Oral Argument Audio Recording at 09:36 (Judge Menashi: "Let's say that [the audit] provision was not in the contract, couldn't you be making the same argument? … Do you need to have a provision that says there's an audit period in which invoices remain open?" Counsel for Plaintiff: "No, Your Honor."); *id.* at 19:01 (Judge Menashi: "Do you agree with what I just said with opposing counsel that the audit provision is not really consequential? … Let's say you agree that the invoices were mistaken and you actually had agreed to pay a different price, you'd still owe that price, right? You wouldn't need a separate provision of the contract that says they have a right to come back and correct the invoices." Counsel for Defendant: "I would agree with that, Your Honor.").

7

conditions other than what is contained in this transaction confirmation and her[e]by rejects … any inconsistent or additional provisions." *Id.*

Marine Petrobulk contends that each transaction is governed not only by the Confirmations but also by all documents relating to that transaction—including the invoices, the parties' email exchanges, and load confirmations. In support of that argument, Marine Petrobulk points to Section 1(g) of the GTCs, which defines a "Confirmation" as "any writing evidencing the Transaction." *Id.* at 17. Yet Section 1(g) does not mean that "all" writings evidencing the transaction are together defined as a "Confirmation." Rather, Section 1(g) indicates that a Confirmation is any *particular* writing evidencing the Transaction. In fact, the GTCs clearly contemplate that each transaction would be governed by a particular document titled "Confirmation." *See id.* at 18 (defining "Transaction" as "the agreement for the purchase or sale of Products which may be evidenced by a Confirmation and shall be governed by these [GTCs]"). Moreover, even if we were to adopt Marine Petrobulk's interpretation of Section 1(g), each Confirmation states that its terms govern its respective transaction and supersede any contrary contractual terms, which would again establish that the Confirmations govern.

**B**

Second, the Confirmations set forth a price per metric ton of VLSFO. The price of VLSFO is given in terms of the Platts Gasoil index price as adjusted by a differential. This pricing formula states the differential in dollars per metric ton, which means that—in order to calculate the price of VLSFO—the Platts Gasoil index price must be converted to a price per metric ton. Furthermore, nearly all the Confirmations list the quantity of VLSFO in metric tons, which indicates that the contract's pricing was set in terms of metric tons.

The fact that the Platts Gasoil index reports its prices in dollars per barrel of gasoil does not mean that the Confirmations set forth a price for the VLSFO in barrels. For the pricing formula to yield a price per barrel, one would need to convert the *differential* using the Platts Gasoil index's 7.45 conversion rate. But the

Confirmations do not suggest that the 7.45 conversion rate would apply to anything other than the index price. In fact, the 7.45 conversion rate is not identified anywhere in the Confirmations; it is incorporated only via the Confirmations' reference to the Platts Gasoil index.

The parties' agreement to use the 7.45 conversion rate to convert the index price to a price in metric tons does not require that the parties use the same rate to convert the resulting contract price from metric tons of VLSFO to barrels. As Phillips 66 notes, such an interpretation would have the "absurd result" of altering the contract price based on whether the purchaser was billed by weight (metric tons) or by volume (barrels). Appellant's Br. 23. Furthermore, Phillips 66's agreement to invoice Marine Petrobulk in barrels does not somehow result in the pricing formula in the Confirmations setting forth a price per barrel. Phillips 66 alleges that Marine Petrobulk's request to be billed in barrels was an "administrative accommodation" that did not change the substantive terms of the contract. Compl. ¶ 19. More importantly, the pricing formula is given in metric tons, and when a contractual term is "clear and unambiguous" it will be "given effect according to its terms." *Glob. Reinsurance*, 22 F.4th at 94; *see also* N.Y. U.C.C. § 2-202.

Finally, Marine Petrobulk argues that Phillips 66's revised calculations must be incorrect because the calculations "render the agreed discount superfluous." Appellee's Br. 35; *see also LaSalle Bank*, 424 F.3d at 206. Marine Petrobulk points out that, even when the differential is negative, the revised invoices often state a VLSFO price per barrel that is *higher* than the Platts Gasoil index price per barrel. We are not persuaded. The negative differential is not rendered superfluous; it always reduces the index price by the stated dollar amount per metric ton. In other words, the final VLSFO price would be even higher if there were no differential. The revised VLSFO price per barrel was higher than the index price per barrel because the contract price was in terms of metric tons and because gasoil and VLSFO have different densities—not because the agreed-upon discount has no effect.

Because we conclude that the Confirmations state a price per metric ton of VLSFO, we do not need to consider evidence of the parties' course of performance—in particular, the original invoices issued and payments made—that may contradict the contract's plain terms. Under Article 2 of the UCC, when a sales contract "involves repeated occasions for performance," a "course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." N.Y. U.C.C. § 2-208(1). However, when we cannot reasonably construe the contract's express terms and the parties' course of performance "as consistent with each other," then the "express terms shall control." *Id.* § 2-208(2); *see also id.* § 1-303(e)(1); *Lion Oil Trading & Transp., Inc. v. Statoil Mktg. & Trading (US) Inc.*, 728 F. Supp. 2d 531, 535 (S.D.N.Y. 2010) ("[W]hen considering a sale of goods contract under the U.C.C[.], the determination of a contract's meaning … is done *in conjunction with* evidence about course of dealing, usage of trade, and the parties' course of performance so long as that extrinsic evidence does not contradict the contract's language."); *Kolmar Americas, Inc. v. Bioversal Inc.*, 932 N.Y.S.2d 460, 461 (App. Div. 2011) (explaining that "Article 2 of the UCC does not authorize the introduction of parole evidence to vary the plain meaning of [a] clause" when the evidence "actually contradicts the unambiguous contractual terms"). The Confirmations and the invoices state two different prices for the same quantity of fuel. Thus, the invoices constitute "parole evidence [that] var[ies] the plain meaning" of the pricing formula and are therefore not relevant to interpreting the contract. *Kolmar Americas, Inc.*, 932 N.Y.S.2d at 461.[3]

---

[3] We note that, although contradictory extrinsic evidence cannot alter the plain meaning of the agreement, such evidence may be relevant to affirmative defenses such as modification, waiver, or estoppel. *See* N.Y. U.C.C. § 2-208(3) (providing that a "course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance"); *id.* § 2-209; *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003) ("Under New York law, parties may modify a contract by another agreement, by course of performance, or by conduct amounting to a waiver or estoppel.") (internal quotation marks omitted). To the extent that Marine Petrobulk may assert that Phillips 66's claim is waived because it accepted payments under the original

Phillips 66 also claims that Marine Petrobulk breached the implied covenant of good faith and fair dealing by not paying the increased amounts in the revised invoices. We affirm the district court's dismissal of this claim as duplicative of the breach of contract claim.

"Under New York law, implicit in every contract is a covenant of good faith and fair dealing which encompasses any promises that a reasonable promisee would understand to be included." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (internal quotation marks and alteration omitted). The implied covenant provides that neither party may "do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract, or to violate the party's presumed intentions or reasonable expectations." *Id.* (internal quotation marks and alteration omitted). A claim for breach of the implied covenant "survives a motion to dismiss only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022). While a party may pursue claims in the alternative when, for example, there is a dispute over the meaning of contractual terms, "[a] party certainly cannot succeed on claims for both breach of an express contract term and breach of the implied covenant based on the same facts." *Spinelli*, 903 F.3d at 206.

Phillips 66 argues that Marine Petrobulk "acted in bad faith when it knew the correct price but attempted to circumvent its obligation to pay for the actual

invoices without objection or is equitably estopped because Marine Petrobulk set resale prices for the fuel it purchased based on Phillips 66's original prices, *see* Appellee's Br. 35-36, the merits of such affirmative defenses may be considered by the district court on remand. *See, e.g.*, *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) (holding that whether a hospital's failure to object to a lower reimbursement rate over a period of eight years constituted a waiver of its contractual right to the higher reimbursement rate was a question of fact).

fuel it received." Appellant's Br. 26-27. These allegations are not "different from those underlying the breach of contract claim." *JN Contemp. Art LLC*, 29 F.4th at 128. Furthermore, because we have now held that the Confirmations unambiguously set forth a price of VLSFO in metric tons, Phillips 66's breach of the implied covenant claim must be dismissed as duplicative.

## III

Finally, Phillips 66 claims that Marine Petrobulk was unjustly enriched by accepting the delivered fuel without paying the total price reflected in the revised invoices. We also affirm the district court's dismissal of Phillips 66's unjust enrichment claim as duplicative.

"To recover under a theory of unjust enrichment, a litigant must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275 (2022) (internal quotation marks and alteration omitted). Unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract …, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). It is "not available where it simply duplicates, or replaces, a conventional contract … claim." *Id.* Thus, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Beth Israel Med. Ctr.*, 448 F.3d at 587 (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)).

Phillips 66 argues that it is entitled to plead an unjust enrichment claim in the alternative because "there is a bona fide dispute about whether the contract covers the full scope of Phillips 66's allegations." Appellant's Br. 30. However, the dispute involves the proper calculation of the invoice price under the contract and

12

the contract clearly encompasses the price calculation. The district court properly dismissed this claim as well.

*    *    *

For the foregoing reasons, we **REVERSE IN PART** and **AFFIRM IN PART** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court