19-3029 (L)
*Zuma Press, Inc. v. Getty Images (US), Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of March, two thousand twenty-one.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> DENNY CHIN,
> MICHAEL H. PARK,
> *Circuit Judges.*

_____

ZUMA PRESS, INC., ANTHONY BARHAM, JOHN MIDDLEBROOK, ACTION SPORTS PHOTOGRAPHY, INC., ANDREW DIEB, ROBERT BACKMAN, DUNCAN WILLIAMS, CHRISTOPHER SZAGOLA, TIYU (BEIJING) CULTURE MEDIA CO. LTD., CHARLES BAUS, MANNY FLORES, LOUIS LOPEZ,

> *Plaintiffs-Appellants-Cross-Appellees*,

> v.                                                   19-3029
>                                                      19-3177

GETTY IMAGES (US), INC.,

> *Defendant-Appellee-Cross-Appellant.*

_____

| For Plaintiffs-Appellants-Cross-Appellees: | JAMES H. FREEMAN, Liebowitz Law Firm, PLLC, Valley Stream, NY |
|---|---|

For Defendant-Appellee-Cross-Appellant:

BENJAMIN E. MARKS (Jonathan Bloom, *on the brief*), Weil, Gotshal & Manges LLP, New York, NY

Appeals from a judgment and order of the United States District Court for the Southern District of New York (Hellerstein, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and order of the district court are **AFFIRMED**.

Plaintiffs-Appellants-Cross-Appellees Zuma Press, Inc. ("Zuma"), Anthony Barham, John Middlebrook, Action Sports Photography, Inc., Andrew Dieb, Robert Backman, Duncan Williams, Christopher Szagola, Tiyu (Beijing) Culture Media Co. Ltd., Charles Baus, Manny Flores, and Louis Lopez (collectively, "Plaintiffs") appeal from a judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*) granting summary judgment in favor of Defendant-Appellee-Cross-Appellant Getty Images (US), Inc. ("Getty"). Getty cross-appeals from an order of the district court denying its motion for attorney's fees. Broadly, this action concerns Plaintiffs' allegations that Getty posted more than 47,000 images associated with Plaintiffs on its website without authorization. On appeal, Plaintiffs contend that the district court erred in granting summary judgment in favor of Getty as to their claim for copyright infringement under Section 501 of the Copyright Act, 17 U.S.C. § 501, and their claim for altering their copyright management information ("CMI") without authority under Section 1202(b)(3) of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b)(3). On cross-appeal, Getty contends that the district court abused its discretion in denying its motion for attorney's fees. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Summary Judgment

We review grants of summary judgment *de novo*, "construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor." *Burns v. Martuscello*, 890 F.3d 77, 83 (2d Cir. 2018) (internal quotation marks omitted). Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### A. Copyright Infringement

Plaintiffs argue that the district court erred in granting summary judgment to Getty as to their copyright infringement claim because issues of fact remain as to whether Getty held a valid license to use their images. We disagree.

"To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "The existence of a license is an affirmative defense, placing upon the party claiming a license 'the burden of coming forward with evidence' of one." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (quoting *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995)). We generally construe copyright licenses "according to principles of contract law." *Great Minds v. Fedex Off. & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018).

3

Here, a reasonable juror could find only that Getty established the existence of a valid license. As the district court concluded, the undisputed facts in the record and the plain language of each of the agreements at issue establish an unbroken chain of authorization from Zuma to Getty. At the start, Zuma and NewSport Photography, Inc. ("NewSport") separately reached agreements with Corbis Corporation ("Corbis"), a large photograph-licensing agency, to license and distribute their respective images. Whereas Zuma's agreement with Corbis yielded Zuma a 40% royalty rate, NewSport's agreement with Corbis yielded NewSport a 50% royalty rate. Zuma learned of NewSport's favorable royalty rate, and it devised an arrangement with NewSport whereby it would submit its images to Corbis under NewSport's contract with Corbis, using NewSport's credentials and NewSport's file transmission protocol ("FTP"). In turn, NewSport's royalty payments were redirected to Zuma. On November 3, 2011, Zuma and NewSport memorialized their agreement in a document titled "Request for Redirection of Royalty Payments" (the "Redirection Agreement"). J. App'x at 341. This agreement specifically affirmed that NewSport was authorized to submit all images it sent to Corbis under its contract with Corbis and that Zuma was authorized to receive royalty payments due to NewSport under its contract with Corbis.

Plaintiffs concede that Zuma delivered all the images at issue in this action to Corbis for distribution under NewSport's contract with Corbis, using NewSport's FTP channel and credentials. NewSport's governing contract with Corbis vested in Corbis "the right to use, reproduce, publish, exhibit, perform, publicly display, distribute, broadcast and transmit" the images. J. App'x at 297. It also authorized Corbis to "assign its rights and obligations . . . to any surviving party as part of a corporate reorganization, consolidation, merger, or sale." J. App'x at 301. Corbis exercised that right in January 2016 when it sold its image portfolio to

4

Unity Glory International Ltd. ("Unity Glory"). And Unity Glory soon thereafter entered into an agreement authorizing Getty to distribute and market outside of China all the images it acquired from Corbis. Getty ultimately obtained the images at issue in this action as part of its agreement with Unity Glory. Given the plain language of each of these agreements, there can be no dispute that Getty obtained a valid license to use the images when it entered into its agreement with Unity Glory.

To the extent Plaintiffs argue that issues of fact remain as to whether Getty held a valid license because they can adduce evidence indicating that Zuma and NewSport terminated the Redirection Agreement, they miss the mark. By the express terms of NewSport's renewed agreement with Corbis in 2012, Corbis was entitled to use the licenses for at least a period of six years, including a three-year initial term and a three-year survival term.[1] Getty posted the images at issue to its website and took them down from its website by June 2016—well within that timeframe. We therefore conclude that the district court did not err in granting summary judgment to Getty as to Plaintiffs' copyright infringement claim.

### B. DMCA Section 1202(b)(3)

Plaintiffs argue that the district court erred in granting summary judgment to Getty as to their claim for altering their CMI without authority under Section 1202(b)(3) of the DMCA because there is a genuine dispute of material fact as to whether Getty: (1) knowingly altered their CMI without authority; and (2) knew or had reason to know that distributing their images would induce, enable, facilitate, or conceal an infringement. We disagree.

---

[1] Notably, the 2012 agreement between NewSport and Corbis provided that any images submitted to Corbis under prior agreements were to be governed by the new terms and conditions.

We recently explained that to establish a violation of Section 1202(b)(3), a plaintiff must prove:

> (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant "distribute[d] . . . works [or] copies of works"; (3) while "knowing that [CMI] has been removed or altered without authority of the copyright owner or the law"; and (4) while "knowing or . . . having reasonable grounds to know" that such distribution "will induce, enable, facilitate, or conceal an infringement."

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (alterations in original) (quoting 17 U.S.C. § 1202(b)). The last two of these elements comprise a "so-called 'double-scienter requirement.'" *Id.* "[T]he defendant who distributed improperly attributed copyright material must have actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law,' as well as actual or constructive knowledge that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Id.* (quoting 17 U.S.C. § 1202(b)). The statutory definition of CMI encompasses, *inter alia*, "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c)(3).

Here, no reasonable juror could conclude that Getty knowingly removed or altered Plaintiffs' CMI without authority. As the district court concluded, there is no evidence in the record on which Plaintiffs can rely to establish that Getty had actual knowledge that the images at issue were comingled with the NewSport collection. On the contrary, a reasonable juror could conclude only that Getty did not know about Plaintiffs' purported rights in the images until Zuma contacted Getty on May 4, 2016, to complain that Getty did not have authorization to use the images—*i.e.*, until after Getty had completed the migration process and posted the images to its website. Getty promptly thereafter removed whatever images it could identify as associated with Zuma from its public-facing website and launched a full investigation into what had happened.

A reasonable juror could find only that the purported changes to Plaintiffs' CMI resulted not from some intentional act of which Getty was aware but from aberrations and mistakes in the automatic migration process itself, during which Getty processed approximately 7,000,000 images. For example, the appearance of a double byline in the metadata of the images resulted from the original inclusion of Zuma's attribution information in Corbis's free-text caption field as opposed to Corbis's photographer name or agency fields. The engineers who developed the migration process did not account for the possibility that CMI would appear in the free-text caption of any image.

Contrary to Plaintiffs' contentions, Getty's post-migration communications fail to create a dispute of material fact as to whether Getty had *actual knowledge* that it altered Plaintiffs' CMI when it undertook the migration process, let alone that it did so without authority. Although the June 27, 2016 email chain that Plaintiffs reference vaguely suggests that Les Walker may have had a "Zuma conversation" with Getty "at some point previously during the migration to Getty talks," J. App'x at 784, Walker flatly testified at his deposition that he was unaware that the images were even in the NewSport collection prior to the migration and that he did not discuss the images with Getty until after the migration. Likewise, the May 5, 2016 conversation that Plaintiffs reference—in which employees investigating Zuma's complaint suggested that Getty may have been aware of "the Zuma thing"—is insufficient, without more, to impute actual knowledge of Zuma's supposed ownership of the CMI to Getty, particularly given that one of the Getty employees noted in the same conversation that "other than the caption, there is no indication in the Corbis data that [the images] belong to Zuma." J. App'x at 780. We therefore conclude that the district court did not err in granting summary judgment to Getty as to Plaintiffs' DMCA claim.[2]

_____

[2] Because we conclude that Plaintiffs cannot establish that Getty knowingly removed or altered

7

## II. Attorney's Fees

We review a "district court's denial of an application for attorney's fees . . . for abuse of discretion." *Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 151 (2d Cir. 2013). Getty contends that the district court abused its discretion in denying Getty's motion for attorney's fees because (1) it failed adequately to explain its denial of Getty's motion; and (2) the totality of the circumstances warrant a fee award as a matter of law. We disagree on both counts.

Section 505 of the Copyright Act and Section 1203 of the DMCA endow district courts with broad discretion to award reasonable attorney's fees to a prevailing party. 17 U.S.C. §§ 505, 1203(b)(5). Of course, that discretion is not without limit: The Supreme Court has set forth several principles to guide a district court's discretion in considering a motion for attorney's fees under Section 505. *See Kirtsaeng v. John Wiley & Sons*, 136 S. Ct. 1979, 1985 (2016). "First, a district court may not 'award[] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment." *Id.* (alteration in original) (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533 (1994)). "Second, a court may not treat prevailing plaintiffs and prevailing defendants any differently . . . ." *Id.* Third, "several nonexclusive factors" may inform the district court's analysis, including "frivolousness, motivation, objective unreasonableness . . . [,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19 (internal quotation marks omitted). A district court "should give substantial weight to the objective reasonableness of the losing party's

_____

their CMI without authority, we need not consider Plaintiffs' additional contention that there is a genuine dispute of material fact as to whether Getty knew or had reason to know that distributing Plaintiffs' images would induce, enable, facilitate, or conceal an infringement.

position," all the while giving "due consideration to all other circumstances relevant to granting fees." *Kirtsaeng*, 136 S. Ct. at 1983.

As an initial matter, we reject Getty's contention that remand is warranted on the procedural ground that the district court failed adequately to explain its decision. To be sure, as Getty notes, the district court's analysis was limited to a recitation of the factors it considered in arriving at its determination. And "[a] recitation of the applicable factors or legal standard, standing alone, is normally not sufficient to permit appropriate appellate review" of a district court's fees decision. *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir. 1997). But we need not remand for further explanation where the reasons for a district court's decision are clear. *See id.* ("If the court fails to make findings and to give an explanation, and the reason for the court's ruling is not clear to us, we will remand for findings and an explanation."). Here, although we would have preferred that the district court provide a more detailed account of how it applied the facts of this case to the factors it considered, the basis of its decision is clear to us, and we are satisfied that it undertook the "particularized, case-by-case assessment" that Section 505 demands. *See Kirtsaeng*, 136 S. Ct. at 1985.

As to the merits of Getty's motion, the district court acted within its discretion in concluding that Plaintiffs' claims were objectively reasonable, non-frivolous, and properly motivated. Plaintiffs' copyright infringement claim concerned a complex set of facts, which Plaintiffs reasonably argued resolved in their favor. *See Chivalry Film Prods. v. NBC Universal, Inc.*, No. 05-CV-5627, 2007 WL 4190793, at *2 (S.D.N.Y. Nov. 27, 2007) (Lynch, *J.*) (noting that a copyright claim may be objectively unreasonable where it "is clearly without merit or otherwise patently devoid of legal or factual basis" (internal quotation marks omitted)). Plaintiffs' DMCA claim turned on the DMCA's double-scienter requirement, which this Court had not construed in

a precedential opinion until well after the district court decided Plaintiffs' motion for summary judgment. *Mango*, 970 F.3d at 174 (rejecting the appellee's request for attorney's fees incurred in defending the appeal "because the interpretation of Section 1202(b)(3) [was] a relatively novel issue and a question of first impression for this Court" (internal quotation marks and citation omitted)).  Moreover, outside of its assertion that Plaintiffs' claims were motivated by the prospect of unjustified statutory damages, Getty points to little in the record to undermine the district court's finding that Plaintiffs brought this action for proper motives.  We therefore conclude that the district court did not abuse its discretion in denying Getty's motion for attorney's fees.

*   *   *

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment and order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk